770 P.2d 394

**In the Matter of the Appeal in MARI-COPA COUNTY, JUVENILE ACTION NO. JV–114428.**

**No. 1 CA–JV 88–038.**

Court of Appeals of Arizona,
Division 1, Department A.

March 14, 1989.

Thomas E. Collins, Maricopa County Atty. by James D. Lee, Deputy County Atty., Phoenix, for appellee.

Dean W. Trebesch, Maricopa County Public Defender by Ellen Edge Katz, Deputy Public Defender, Phoenix, for the Juvenile.

## OPINION

JACOBSON, Judge.

The juvenile appeals from an order suspending his license until his eighteenth birthday after he was adjudged delinquent and placed on intensive probation. He raises constitutional challenges to his license suspension based upon equal protection

and due process violations. Because we find the statute to be rationally related to a legitimate state purpose, we uphold the statutory basis for the juvenile's license suspension, and affirm the trial court's order.

### Procedural Background

On April 29, 1988, the juvenile was charged in a petition alleging delinquency with one count of the sale of marijuana, in violation of A.R.S. § 13–3405(A)(2). At the advisory hearing on June 9, 1988, the juvenile denied the allegations of the petition, the court appointed counsel to represent him, and he was released to the custody of his parents. At the pre-adjudication hearing on August 10, 1988, the juvenile agreed to admit to an amended allegation of possession of marijuana for sale. Before accepting the admission, the court obtained the concurrence of the juvenile's father in the plea, addressed the juvenile personally, advised him of his constitutional rights, and determined that the admission was knowing, voluntary, intelligent, and had a factual basis. On the basis of the admission, the court found the juvenile to be delinquent.

At the September 19, 1988, disposition hearing, the court ordered that the juvenile be placed on intensive probation, in the care, custody, and control of his parents. Special terms of probation were also imposed. In addition, the court ordered the juvenile's driver's license suspended until his eighteenth birthday, pursuant to A.R.S. § 8–249(D). The juvenile timely appealed.

### Discussion

The statutory basis for the juvenile's license suspension is found in A.R.S. § 8–249(D) (Supp.1988):

In addition to any other penalties prescribed by law, if the court finds that a child has violated any provision of title 13, chapter 34 [A.R.S. § 13–3401 *et seq.*], or has been adjudicated in juvenile court for conduct prohibited by any provision of chapter 34, the court *SHALL* require the surrender to the court of any driver's license of the child and *SHALL* order the

department to suspend the license until the child reaches the age of eighteen. If the court finds that the child does not possess a currently valid driver's license, the court *MAY* direct that the department of transportation not issue a driver's license to the child until the child attains the age of eighteen years.

(Emphasis added). By reason of the juvenile's adjudication of delinquency based upon possession of marijuana for sale, in violation of A.R.S. § 13–3405, this statute is applicable to him.

The juvenile first contends that, because the statute provides mandatory suspension for a licensed juvenile and discretionary denial of a license to an unlicensed juvenile, A.R.S. § 8–249(D) is unconstitutional as violative of equal protection. His second argument is that no rational basis exists for suspending juvenile licenses for drug offenses when no corollary suspension exists for adult drug offenders. His third challenge is that the statute violates due process because no nexus exists between the drug violation and the punishment of license suspension, when the statute does not limit the punishment to vehicle-related offenses.

■ The analysis of the constitutionality of a statute based upon a violation of equal protection starts with a determination of what standard applies in determining a state interest. If the statute impinges on a fundamental right, such as the right to vote, or involves a suspect classification, such as race, we must subject it to strict scrutiny. If, however, neither a fundamental right nor a suspect classification is involved, we apply a rational basis test. *See generally Bryant v. Continental Conveyor & Equip Co.*, 156 Ariz. 193, 751 P.2d 509 (1988). A "right to drive" has never been recognized as a fundamental right under either our federal or state constitutions. Furthermore, classifications on the basis of age specifically have been held *not* to be suspect. *See Massachusetts Bd. of Retirement v. Murgia*, 427 U.S. 307, 313, 96 S.Ct. 2562, 2567, 49 L.Ed.2d 520, 525 (1976); *Lewis v. Tucson School Dist.*, 23 Ariz.App. 154, 156, 531 P.2d 199, 201, *cert. denied*,

423 U.S. 864, 96 S.Ct. 123, 46 L.Ed.2d 92 (1975). Thus, the rational basis test applies to the juvenile's constitutional challenges.

■ Under rational basis analysis, "[a]s long as the statute is not arbitrary or irrational, and is reasonably related to a legitimate state purpose, it must be upheld." *Bryant,* 156 Ariz. at 196–97, 751 P.2d at 512–13. Thus, we will find an equal protection violation only "if the classification rests on grounds wholly irrelevant to the achievement of the state's objectives...." *Id.* Equal protection is not violated "if any set of facts can be reasonably perceived to sustain the classification." *Goodyear Farms v. City of Avondale,* 148 Ariz. 216, 222, 714 P.2d 386, 392 (1986).

A perceived legitimate state purpose in suspending licenses of juvenile drug offenders is twofold: (1) to discourage juvenile drug users by the threat of losing their licenses; and (2) to keep juvenile drug users off the roads.

The distinction between licensed and unlicensed juveniles is reasonable because of the short time the court has to deal with a licensed offender between the ages of at least 16, when a juvenile becomes license-eligible, and 18, when the juvenile court loses jurisdiction over the offender. A licensed driver may be deterred from using drugs by the knowledge that his or her license will be suspended if he or she became involved with drugs. However, an unlicensed drug offender may be significantly younger than 16, and thus be subject to many years of juvenile court supervision before reaching age 18. Thus, a mandatory suspension may not be as necessary. For example, if the juvenile is only 12, not permitting him or her to obtain a license until 18 may have no relationship to punishment because the juvenile may become a responsible citizen before attaining license eligibility at age 16. If the juvenile is unlicensed but at least 16 and eligible for a license, the court has the discretion to treat him or her like a licensed driver and suspend driving privileges until age 18. The statute therefore is rationally related to the legitimate state objective, and does not violate equal protection based on the different treatment of licensed and unlicensed juveniles.

■ The juvenile's second argument is that the statute violates equal protection guarantees because no similar provision exists to punish adult drug offenders. However, the distinction between punishments for adults and juveniles is constitutional if it serves a legitimate state purpose and contains sufficient procedural safeguards to meet due process requirements. *Schall v. Martin,* 467 U.S. 253, 104 S.Ct. 2403, 81 L.Ed.2d 207 (1984); *In re Juvenile Appeal No. J–90110,* 127 Ariz. 389, 391, 621 P.2d 298, 300 (App.1980).

We have already found a legitimate state purpose of preventing drug abuse. Procedurally, the juvenile system contains adequate safeguards to meet due process requirements. The child's father concurred in the plea, and the child was advised of the consequences and of his constitutional rights prior to pleading. The statute does not allow a license suspension until the child is found delinquent under these procedural safeguards.

Furthermore, the legislature may operate in a piecemeal fashion, remedying one narrow area at a time rather than enacting a solution for all problems at once. *AFL v. American Sash & Door Co.,* 67 Ariz. 20, 32, 189 P.2d 912, 920 (1948), *aff'd* 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222 (1949). Therefore, the legislature is free to design a statute to deter drug abuse among juveniles without addressing the companion problem of adult offenders at the same time. The juvenile's equal protection challenges thus fail.

■ The juvenile's third argument is that the statute violates due process because it fails to limit the license suspension to vehicle-related drug offenses. The legislative history of House Bill 2202 indicates that the legislators believed a rational relationship existed between license suspension and drug abuse prevention:

> Senator Gutierrez questioned the correlation between a juvenile found guilty for possession of marijuana but not operating a motor vehicle, being ordered by

the court to surrender his driver's license for a 2–year period or until the juvenile becomes 18 years of age. Mr. Bitner stated that the concept was a punitive measure against the juvenile which would ultimately have an impact on the juvenile's behavior. Senator Gutierrez asked who suggested this type of law enforcement and Senator Mawhinney read a portion of the letter received from law enforcement officials suggesting that such language be added to H.B. 2202 to serve as a deterrent for juveniles to become involved with illegal drugs. Senator West commented that he was in concurrence with Senator Mawhinney's statements in an attempt to get the attention of the juveniles in lieu of being locked up in jail and that if more emphasis were put on drying up the demand side, less emphasis would be on the supply side. Senator Kay commented that juveniles do have certain protections because they are under 18 years of age and that the proposed amendment was an effort to balance the scales.

Minutes of Meeting, Senate Committee on Judiciary, April 28, 1987, at 3. We believe this analysis meets the first prong of the *Schall* due process test. We hold that the legislature could rationally believe that denying a juvenile his or her means of transportation would serve to deter juvenile drug abuse, which we have already found to be a legitimate state objective. We believe this rational relationship exists whether the original drug offense for which the juvenile is punished was vehicle-related or not.

The second prong of the *Schall* test is also met on this challenge. As previously stated, the license suspension is subject to the procedural safeguards afforded to all juveniles in every court proceeding. We thus find no due process violation from the fact that license suspension is not imposed solely for offenses involving motor vehicles.

We therefore conclude that A.R.S. § 8–249(D) is constitutional. The order

suspending the juvenile's license until his eighteenth birthday is affirmed.

GERBER and BROOKS, JJ., concur.