582 A.2d 1326

**COMMONWEALTH of Pennsylvania,**

v.

**Troy STRUNK, Appellant.**

Superior Court of Pennsylvania.

Argued June 13, 1990.

Filed Dec. 3, 1990.

Mark S. Love, Mt. Pocono, for appellant.

Gregory D. Anthony, Asst. Dist. Atty., Warren, for Com., appellee.

Timothy P. Wile, Asst. Counsel, Harold H. Cramer, Asst. Chief Counsel, John L. Heaton, Chief Counsel, Harrisburg, for Department of Transportation, amicus curiae.

Before BECK, POPOVICH and HESTER, JJ.

BECK, Judge:

On appeal we consider whether a state imposing a 90–day driver's license suspension based upon an underaged defendant's conviction of merely possessing an alcoholic beverage, violates the defendant's substantive due process rights or the prohibition against cruel and unusual punishment, where the violation was not connected to the possession or operation of a motor vehicle. We conclude that the imposition of the 90–day license suspension did not violate either the defendant's substantive due process rights or his right to be free from cruel and unusual punishment.

On July 21, 1989, a police officer observed appellant, Troy Strunk, then 19 years old, standing outside, at the top of a stairwell at a residential property in Stroudsburg, with a

12–ounce bottle of beer in his hand. At that time the officer issued Strunk a citation for the underage possession, consumption, transportation and purchase of an alcoholic beverage. 18 Pa.Cons.Stat.Ann. § 6308 (Purdon 1983). Strunk pled guilty before a district justice to the section 6308 violation. He subsequently filed a timely appeal with the Court of Common Pleas of Monroe County.

Judge Ronald E. Vican conducted a *de novo* trial and found the defendant guilty of possessing and consuming alcoholic beverages in violation of section 6308. Thereafter, the defendant filed timely post-verdict motions which the trial court denied. The trial court suspended the defendant's operating privileges for a period of 90 days, pursuant to 18 Pa.Cons.Stat.Ann. § 6310.4 (Purdon Supp.1990),[1] and ordered Strunk to pay $100.00 and prosecution costs. The defendant appeals this sentence.

On appeal, the appellant challenges the constitutionality of section 6310.4 on both substantive due process and cruel and unusual punishment grounds. After careful consideration and extensive research we reject both of these claims.

Appellant's first contention is that the 90–day license suspension based upon his conviction of merely possessing and consuming alcoholic beverages, unconnected with his operation or possession of a motor vehicle, violates his substantive due process rights under both the Pennsylvania[2] and United States Constitutions.[3] Specifically, appellant claims that because his violation of section 6308 was

1. Section 6310.4 provides that "[w]henever a person is convicted or is adjudicated delinquent or is admitted to any preadjudication program for a violation of ... section 6308 ... the court ... shall order the operating privilege of the person suspended." 18 Pa.Cons.Stat.Ann. § 6310.4 (Purdon Supp.1990). The duration of the suspension for a first offense is 90 days. *Id.* at 6310.4(b)(1).

2. The Pennsylvania Constitution provides that in criminal prosecutions the accused cannot "be deprived of his life, liberty, or property, unless by the judgment of his peers or the law of the land." Pa.Const. art. I, § 9.

3. The Due Process Clause of the Fourteenth Amendment of the United States Constitution establishes that "[n]o state shall ... deprive any person of life, liberty, or property, without due process of the law...." U.S. Const. amend. XIV, § 1.

not in any way connected to the operation or possession of a motor vehicle, the 90-day license suspension bore no rational relationship to promoting the state's interest in the safe operation of motor vehicles and, therefore, violates his right to due process.

Initially, we must determine the appropriate standard to utilize in evaluating the constitutionality of the challenged statute. Appellant suggests that an individual's right to retain his or her driver's license is fundamental in nature and, therefore, that we should analyze the constitutionality of the statute under the "strict scrutiny" standard. However, while an individual's right to possess a driver's license is considered a "privilege" in the constitutional sense, the right to do so is not fundamental. Therefore, it would be improper to elevate the suspension of a driver's license to a level requiring strict scrutiny. *See Mays v. Scranton City Police Dept.*, 503 F.Supp. 1255, 1261 (M.D. Pa.1980); *see also Commonwealth v. Gassoway*, 199 Pa.Super. 479, 481, 185 A.2d 671, 672 (1962) (license to operate motor vehicle on public highways is a privilege; Commonwealth possesses authority to limit privilege to those who are able to exercise the privilege with a reasonable degree of safety). In deciding cases relating to this privilege, Pennsylvania courts have uniformly evaluated driver's license suspensions or revocations under the "reasonable basis" standard, under which the privilege of possessing a driver's license can be granted, denied or limited by our legislature based upon any reasonable basis. *Appeal of Deems*, 39 Pa.Commw. 138, 395 A.2d 616 (1978); *Commonwealth, Dept. of Transp., Bureau of Traffic Safety v. Lemon*, 31 Pa.Commw. 133, 375 A.2d 857 (1977); *Sheehy Motor Vehicle Operator License Case*, 196 Pa.Super. 122, 173 A.2d 752 (1961). *See Sharon v. Larson*, 650 F.Supp. 1396 (E.D.Pa.1986); *Sheakley v. Commonwealth, Dept. of Transp.*, 99 Pa.Commw. 328, 513 A.2d 551 (1986), *allocatur denied*, 515 Pa. 586, 527 A.2d 546 (1987). We, therefore, must utilize the "reasonable basis" test as our analytical tool in evaluating the instant constitutional challenge.

At the outset, we note that legislative enactments enjoy a strong presumption of constitutionality. *United States v. Geller*, 560 F.Supp. 1309 (E.D.Pa.1983), *aff'd*, 745 F.2d 49 (3d Cir.1984); *James v. Southeastern Pennsylvania Transp. Auth.*, 505 Pa. 137, 477 A.2d 1302 (1984). *See* 1 Pa.Cons.Stat.Ann. § 1922(3) (Purdon Supp.1990). The party challenging a statute's constitutionality bears the burden of establishing that no rational relationship exists between a statute and a legitimate state interest. *Morris v. Commonwealth, Public School Employes' Retirement Sys.*, 114 Pa.Commw. 369, 538 A.2d 1385 (1988), *appeal denied*, 521 Pa. 615, 557 A.2d 345 (1989); *Commonwealth v. Finnegan*, 280 Pa.Super. 584, 421 A.2d 1086 (1980). An enactment of the legislature will be deemed to be constitutional unless the challenging party advances evidence that the statute clearly, palpably and plainly violates the Constitution. *Consumer Party of Pennsylvania v. Commonwealth*, 510 Pa. 158, 507 A.2d 323 (1986); *O'Donnell v. Casey*, 45 Pa.Commw. 394, 405 A.2d 1006 (1979). Any doubts regarding the constitutionality of a challenged statute are to be resolved in favor of the statute's constitutionality. *Geller*, 560 F.Supp. 1309. We now apply these principles in evaluating the challenged statute under the rational relationship test.

The rational relationship test evaluates whether a particular statute is *"rationally related* to furthering a legitimate state purpose." *Meier v. Anderson*, 692 F.Supp. 546, 552 (E.D.Pa.1988), *aff'd*, 869 F.2d 590 (3d Cir.1989).[4] "It is enough that there is an evil at hand for correction, and that it might be thought that the particular legislative measure was a rational way to correct it." *Id.* (quoting *Williamson v. Lee Optical of Oklahoma*, 348 U.S. 483, 488, 75 S.Ct. 461, 464–65, 99 L.Ed. 563 (1955)). Thus, the rational relationship

---

4. While appellant challenges the statute's constitutionality under both the Pennsylvania Constitution and the United States Constitution, because the rational relationship test applicable to claims of violations of substantive due process rights is virtually identical under both constitutions we will not separately analyze each. For this reason, we have cited to federal cases which analyze substantive due process challenges.

test mandates a two-step analysis. The first step is to consider whether the challenged statute seeks to promote *any* legitimate state interest or public value. *Meier,* 692 F.Supp. at 552; *Mays,* 503 F.Supp. at 1261 (quoting *Malmed v. Thornburgh,* 621 F.2d 565 (3d Cir.), *cert. denied,* 449 U.S. 955, 101 S.Ct. 361, 66 L.Ed.2d 219 (1980)). The second prong of the analysis mandates an evaluation of whether the statute is reasonably related to accomplishing the articulated state interest or interests. *Meier,* 692 F.Supp. at 552. *See, e.g., Maurer v. Boardman,* 336 Pa. 17, 20–23, 7 A.2d 466, 471 (1939), *aff'd sub nom. Maurer v. Hamilton,* 309 U.S. 598, 60 S.Ct. 726, 84 L.Ed. 969 (1940) (as long as legislature acts neither arbitrarily nor capriciously, it may enact any regulation it believes is necessary to protect life, limb or property on the Commonwealth's roadways). We turn now to the arguments appellant asserted in his brief to establish his contention that the statute is arbitrary and irrational.

■ Appellant contends that section 6310.4 is unconstitutional because it bears no rational relationship to a conviction for the possession or consumption of alcoholic beverages which did not involve the operation or possession of a motor vehicle. Initially, we note that appellant mischaracterizes the focus of our inquiry. Under a substantive due process analysis regarding the constitutionality of section 6310.4, we are not concerned with whether section 6310.4 is rationally related to section 6308. Rather, our inquiry is limited to whether section 6310.4 is reasonably related to achieving a legitimate state interest. Under this analysis, clearly we need not evaluate whether a nexus exists between the challenged section (section 6310.4) and an unchallenged section (section 6308). Thus, while appellant contends that a license suspension may only result from a violation that is directly related to the operation or posses-sion of a motor vehicle, no per se rule exists to support this bold proposition.[5] Rather, as noted above, a legislative

5. In fact, we highlight two Commonwealth Court decisions which support the opposite proposition. *See Deems,* 39 Pa.Commw. at 139–

enactment will be sustained where: 1) any legitimate state interest exists, and 2) it is reasonable to conclude that the subject legislation provides a rational way to promote that state interest. *Meier, supra.*

First, we consider whether the punishment contained in section 6310.4 promotes *any* legitimate state interest. In this case appellant asserts that the state interest is the promotion of public safety on the roadways. Appellant contends that there is no rational relationship between the challenged statute and public safety. While this may or may not be a valid assertion, public safety is just one of many state interests the legislature may have sought to promote when it enacted section 6310.4.

Indeed it is quite plausible and even probable that the legislature may have intended section 6310.4 to promote the goals of deterrence and punishment, i.e. to discourage the possession and consumption of alcohol by underaged individuals. It is undisputed that underage drinking and driving results in a high number of fatalities in the United States each year. *See* Rosenthal, *The Minimum Drinking Age for Young People: An Observation,* 92 Dick.L.Rev. 649, 657 (1988). It follows, therefore, that if underage drinking could be eliminated, thousands of lives could be saved each year. With these premises in mind, we note that prior to section 6310.4's enactment, those under 21 years of age convicted of possession or consumption of alcoholic beverages were often subject only to a fine, in some cases as low as $25.00. The legislature may have believed that in many cases such fines were either paid by the violator's parents or were so minimal as to serve neither punitive nor deterrent functions. Thus, the legislature may

41, 395 A.2d at 617 (affirmed trial court's revocation of defendant operator's license for violation of statute which prohibits the sale of a motor vehicle with effaced serial numbers; despite revocation's lack of connection to increasing road safety, revocation deters illegal sale of vehicles with defaced numbers; deterrence interest is a valid state interest); *Lemon,* 31 Pa.Commw. at 134–35, 375 A.2d at 858 (upheld revocation of license based upon defendant's having violated Pennsylvania statute which prohibits the possession of a forged inspection certificate).

have sought to impose a penalty which would deter and punish any offender, regardless of the financial penalty involved. Clearly, the penalty of a 90–day license suspension advances both of these goals.

We find, therefore, that both deterrence and punishment represent legitimate state interests, and indeed may have constituted the legislative goals underlying the challenged enactment. *Deems*, 39 Pa.Commw. at 139–41, 395 A.2d at 617 (deterrence interest is a valid state interest); *Lemon*, 31 Pa.Commw. at 134–35, 375 A.2d at 858 (deterrence constitutes a legitimate state goal). We emphasize that the rational relationship test does not require definitive proof that a particular goal was in fact considered by the legislature. Rather, as long as a legislative enactment *promotes* a legitimate state interest, the mandates of this prong will be found to have been satisfied. Appellant has failed to show that deterrence and punishment are not legitimate state interests. However, our inquiry does not end here.

Next we must consider whether 6310.4 is rationally related to the goals of deterring and punishing underage possession and consumption of alcoholic beverages.[6] We reiterate that in order to satisfy this second requirement we need only find that a particular problem exists and that the legislative enactment was a rational way to remedy the problem. *Meier*, 692 F.Supp. at 552. The corollary to this requirement is that in order to satisfy its burden, a party challenging a statute must establish that the statute is "arbitrary" and "irrational". Here we consider whether it was rational to believe that the enactment of section 6310.4 would further the goals of deterrence and punishment. We point out that the state is not required to introduce empiri-

6. We reiterate that in his brief the appellant mischaracterizes the appropriate focus of our inquiry. Appellant contends that a relationship must exist between the violation of section 6308, based upon possession and consumption of alcoholic beverages, and the suspension of a driver's license under section 6310.4. However, there is no requirement that such a relationship be established. Rather, where a party challenges the constitutionality of a statute based upon an alleged substantive due process violation, a rational relationship need only exist between the state interest(s) (deterrence or punishment) and the challenged legislation (section 6310.4).

cal evidence of a statute's proven deterrent or punitive effect. Rather, as long as the Pennsylvania legislature could reasonably have believed that section 6310.4 was a rational means of deterring and punishing underage possession and consumption of alcoholic beverages, we must find the statute constitutional.[7]

We find that the appellant has failed to introduce any evidence to establish that the statute is either arbitrary or irrational.[8] Section 6310.4 indeed represents a rational means of deterring and punishing underage consumption and possession of alcohol.[9] We recognize that a license to drive a car is an important privilege to youths. Their social status, their psychological and physical independence, and their ability fully to participate in peer group activity may all be implicated if this privilege is suspended. Furthermore, a driver's license suspension may affect a youth's economic welfare by limiting his ability to travel to and from a place of employment. For these reasons, a license

7. Almost 20 years ago the New Jersey Supreme Court confronted an analogous set of facts and a similar constitutional challenge. In *State v. Smith*, 58 N.J. 202, 276 A.2d 369 (1971), the defendant challenged the suspension of her driver's license on substantive due process and equal protection grounds based upon her conviction for a single unlawful use of marijuana which was not in any way connected with the operation of an automobile. Addressing the due process claim, the New Jersey Supreme Court found that the legislative interests of punishment, deterrence and rehabilitation were both legitimate and rationally related to the penalty of license suspension for marijuana use. *Id.* at 212–13, 276 A.2d at 374. For example, the *Smith* court explained that the goal of deterring drug users from driving on roadways is clearly sensible. *Id.* at 212–13, 276 A.2d at 374. In addition, the court predicated its decision on the legislature's legitimate goal of promoting highway safety. The court concluded that the aforementioned legislative goals and their rational relationship to the penalty of license suspension were neither irrational nor arbitrary, and, the statute therefore, was constitutional. While we are in no way bound by this decision, we find the *Smith* court's reasoning to be both persuasive and correct, and cite it as further support for our finding that punishment and deterrence rationally underlie the challenged enactment.

8. Generally, where a challenged enactment imposes a criminal penalty, the presumption of the constitutionality of the enactment required under the rational relationship analysis is very difficult to overcome.

9. We note that as the New Jersey Supreme Court noted in *Smith*, section 6310.4 might also be thought of as a rational means of deterring underage alcohol users from driving on the highways.

suspension, while indeed disruptive to those under 21 years of age, provides a far more effective deterrent than a monetary fine.

We conclude that section 6310.4 does not violate appellant's substantive due process rights under either the Pennsylvania Constitution or the United States Constitution.

Appellant's second contention is that a 90–day driver's license suspension for the mere possession and consumption of alcoholic beverages violates the Pennsylvania and United States Constitutions' proscriptions against cruel and unusual punishment. Specifically, appellant asserts that section 6310.4's imposition of a 90–day license suspension is a disproportionate penalty for the offenses of possession and consumption of alcoholic beverages, where the violations were not linked to the possession or operation of a motor vehicle.

We reiterate that a party challenging the constitutionality of a legislative enactment bears the burden of overcoming the enactment's presumption of constitutionality. *Commonwealth v. Blystone*, 519 Pa. 450, 462–64, 549 A.2d 81, 87 (1988), *aff'd sub nom. Blystone v. Pennsylvania*, 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); *Commonwealth v. Middleton*, 320 Pa.Super. 533, 543–45, 467 A.2d 841, 846 (1983) (citation omitted). Any doubts regarding a statute's validity are to be resolved in favor of the statute's constitutionality. *Blystone*, 519 Pa. at 462–64, 549 A.2d at 87.

The United States Constitution [10] provides that "[e]xcessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.[11] The eighth amendment prohibits "barbaric"

10. The eighth amendment, which embodies the proscription against cruel and unusual punishment, was applied to the states through the fourteenth amendment's due process clause. *Thompson v. Oklahoma*, 487 U.S. 815, 108 S.Ct. 2687, 101 L.Ed.2d 702 (1988).

11. The guarantee against cruel and unusual punishment contained in the Pennsylvania Constitution's article one, section 13, provides no broader protections against cruel and unusual punishment than those extended under the United States Constitution. *Commonwealth v.*

36

punishment, as well as punishments "that are 'excessive' in relation to the crime committed." *Coker v. Georgia,* 433 U.S. 584, 592, 97 S.Ct. 2861, 2866, 53 L.Ed.2d 982 (1977). A punishment is considered "excessive" and therefore unconstitutional if it either "(1) makes no measurable contribution to acceptable goals of punishment and hence is nothing more than the purposeless and needless imposition of pain and suffering; or (2) is grossly out of proportion to the severity of the crime. A punishment might fail the test on either ground." *Id.* at 592, 97 S.Ct. at 2866. In the case sub judice, appellant challenges the validity of section 6310.4 on the second ground articulated by the Supreme Court in *Coker.*

We commence our analysis by highlighting the oft-stated principle that the scope of the protections afforded by the prohibition against cruel and unusual punishment is not static. *Trop v. Dulles,* 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). We cannot, therefore, evaluate whether a particular punishment is invalid based on its disporportionality to the severity of a crime in a vacuum. Nor can we base such an evaluation upon our own subjective notion of what constitutes cruel and unusual punishment. Rather, we must focus our evaluation upon "evolving standards of decency" in order to identify objective factors to utilize in evaluating a statute's validity. *Id.* These objective indicia include, but are not limited to, public attitudes, history and precedent, and legislative attitudes. These factors, and others that may be applicable in a particular case, help courts to ascertain the citizenry's views regarding a particular punishment for a given offense, in order to provide courts with an objective framework within which to evaluate the validity of a criminal sanction. Thus, it is a court's duty "to *identify* the 'evolving standards of decency'; to determine, not what they *should* be, but what they *are.*"

*Zettlemoyer,* 500 Pa. 16, 72–74, 454 A.2d 937, 967 (1982), *cert. denied sub nom. Zettlemoyer v. Pennsylvania,* 461 U.S. 970, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983), *reh'g denied,* 463 U.S. 1236, 104 S.Ct. 31, 77 L.Ed.2d 1452 (1983).

*Stanford v. Kentucky,* 492 U.S. 361, 378, 109 S.Ct. 2969, 2979, 106 L.Ed.2d 306, 323 (1989).

■ Applying these principles to the appellant's constitutional challenge, we underscore that while no sentence is to be considered per se constitutional, courts are instructed to grant the legislature substantial deference in delineating types and limits of penalties. *Solem v. Helm,* 463 U.S. 277, 290, 103 S.Ct. 3001, 3009–10, 77 L.Ed.2d 637 (1983). We also observe that successful challenges to a criminal penalty are extremely rare where the penalty is something other than capital punishment. *Id.* at 289–90, 103 S.Ct. at 3009–10.

■ The issue before the court then, is whether the penalty of a 90-day license suspension is so disproportionate to the offense of underage possession and consumption of alcoholic beverages as to offend "evolving standards of decency or a balanced sense of justice." *Commonwealth v. Carr,* 375 Pa.Super. 168, 175, 543 A.2d 1232, 1235, *allocatur denied,* 520 Pa. 613, 554 A.2d 506 (1988).

First we will examine the nature of the prohibited offense. We will then consider whether the required penalty of a 90-day license suspension for a violation of this offense is disproportionate under current public notions of justice and fairness.

In evaluating the nature of the prohibition against underage possession and consumption of alcoholic beverages, while we are cognizant that this violation is certainly not as serious as murder, rape or other felonies, it is by no means to be considered a trivial offense. The legislature's enactment of sections 6308 and 6310.4 evinces a recognition of: (1) the problems inherent in underage alcohol possession and consumption, (2) the possible safety hazards posed by the combination of underage drinking and the operation of a motor vehicle, and (3) the ineffectiveness of punishing underage drinking by the more traditional penalty of the imposition of a monetary fine. In addition, the steady increase in alcohol related automobile fatalities has generat-

ed a powerful anti-drunk driving movement. *See* Rosenthal, *supra* note 5, 92 Dick.L.Rev. at 657 (alcohol-related traffic deaths were number one killer of fifteen to twenty-four-year olds according to 1980 statistics). While we have no empirical evidence that establishes a link between underage alcohol consumption and highway fatalities, we cannot ignore the obvious conclusion that the two are related. *See* Rosenthal, *supra* note 5, 92 Dick.L.Rev. at 657 ("Young drivers who drink are highly dangerous to themselves as well as to everyone else."); *See also* Cal.Veh.Code § 13202.5 historical note (Deering Supp.1990) ("Individuals who abuse drugs or alcohol demonstrate a dangerous disregard for the safe legal operation of motor vehicles. The risk is particularly acute for individuals under the age of 21"). Based on the proliferation of the anti-drunk driving movement throughout this state and the nation, we cannot say that the citizenry views underage alcohol possession and consumption as trivial offenses. Rather, we find that the general public views underage alcohol possession and consumption as serious offenses that must be punished in a way that will deter future violations. *See Zettlemoyer*, 500 Pa. at 74–76, 454 A.2d at 968 (enactments of our legislature provide the most accurate indicators of evolving standards of decency).[12]

The next step in our analysis is to consider whether the penalty imposed is disproportionate to the offense. We note that while the legislature could have substituted lesser penalties for the 90–day license suspension, there is no constitutional requirement that the legislature impose the least severe penalty. We also point out that an important goal of punishment is the protection of the public. *Com-*

12. In California, for example, in the historical note to a similar provision providing for a one year license suspension, the California legislature attempted to justify the penalty, stating that "[t]he increased potential for teenage deaths in vehicle collisions and other nondriving accidents, homicides, and suicides, while being under the influence of drugs or alcohol, requires special attention in order to reduce the statewide youth fatality rate and to control unlawful and unsafe driving practices." Cal.Veh.Code § 13202.5 historical note (Deering Supp.1990).

*monwealth v. Howard*, 373 Pa.Super. 246, 248–50, 540 A.2d 960, 961 (1988). By eliminating or reducing the incidence of underage alcohol consumption, the number of alcohol-related traffic fatalities will be reduced, thus contributing to the goal of protection of the public. These principles in conjunction with the seriousness of the offenses of underage alcohol possession and consumption, lead us to conclude that a 90–day driver's license suspension is not an excessive penalty for a section 6308 violation under "evolving standards of decency". A person receiving a license suspension penalty retains the freedom to move from place to place, with only a three-month limitation on his means to do so. Given the challenged statute's presumption of constitutionality and the substantial deference we must extend to the Pennsylvania legislature in this area, we simply cannot find that this penalty violates the proscription against cruel and unusual punishment by imposing a penalty that is *grossly* disproportionate to the underlying offense.

Judgment of sentence affirmed.

POPOVICH, J., files a dissenting opinion.

POPOVICH, Judge, dissenting opinion:

I dissent. Upon thorough review of the record and statutory provisions herein relevant, I disagree, first, with the majority's characterization of the test of "rational relationship" under the substantive component of the Due Process Clause. Second, armed with the improper test, the majority thereupon undertook a misguided analysis and in so doing creates dangerous, if not boundless, precedent.

The thrust of the majority opinion can be found in the conclusion that the test for "rational relation" as derived from the substantive implications of the Due Process Clause compels that the penalty (here, suspension of driver's privileges), need be related to the crime (here, the crime of underage drinking), only so far as the legislature might have rationally believed that it serves a "deterrent func-

tion." Hence, the majority considers the constitutional test fully satisfied if the penalty, however arbitrarily arrived at, is rationally related to achieving *any* state interest.

> Under a substantive due process analysis regarding the constitutionality of section 6310.4 [mandated termination of driver's licence for conviction under § 6308], we are not concerned with whether 6310.4 is rationally related to section 6308 [violation for person under 21 years old to, *inter alia*, possess brewed beverages].
>
> . . .
>
> a rational relationship need only exist between the state interest(s) (deterrence and punishment) and the challenged legislation (section 6310.4).

*Ante* 582 A.2d at 1328–29 & n. 6.

I find this suggestion unpersuasive, as both incomplete on the law and dangerous as a matter of precedent. Yet, in no way do I seek to denigrate the sense of public urgency and social concern associated with underage drinking. Thus, I find it well within the bounds of rationality that the legislature considered removal of a driver's license as "deterring" youthful drinking. The majority, however, cites not one United States Supreme Court, Pennsylvania Supreme Court or Pennsylvania Superior Court decision in support of this singular "deterrence" approach to judicial scrutiny under the Due Process Clause.[1] Contrarily, I find judicial inquiry properly framed under the Due Process Clause as demanding that we consider the rationality, or irrationality, of suspending operator's privileges *where a*

---

**1.** Analogous laws have met with mixed responses in the state courts. Compare *People v. Lindner*, 127 Ill.2d 174, 535 N.E.2d 829 (1989) (irrational and arbitrary for state to punish crimes of sexual assault, where an automobile was not implicated, with suspension of operator's privileges) and 4 Op. Idaho Att'y Gen. 1, 5 (1984) (concluding that "[l]oss of a driver's license for violation of a law unrelated to driving amounts to an arbitrary forfeiture of a state created property interest without justification.") with *Matter of Maricopa County*, 160 Ariz. 90, 770 P.2d 394 (1989) (announcing that Arizona legislature considered suspension of driver's license to serve as a deterrent of underage drinking is sufficient under due process inquiry) and with *State v. Smith*, 58 N.J. 202, 276 A.2d 369 (1971) (law requiring suspension of driver's license for narcotics conviction rationally related to state interest in highway safety and deterrence of narcotics usage).

*minor is convicted of underage drinking and where a motor vehicle is not implicated.*

Perhaps the dearth of case precedent in support of the majority's position bespeaks the inherent weakness of the doctrine and the subsumed illogic thereof. The test of judicial scrutiny under the substantive component of the due process clause is not a unidirectional or unidimensional one looking exclusively at the state end—here, preventing underage drinking—and simply asking whether the statute at issue serves a deterrent function with respect to the crime. I suggest the test of rationality is not so narrowly confined, and that there must also be a "rational relationship" or nexus between the end and the means so as not to make selection of the particular means entirely arbitrary as a matter of penology.

There exists within our penal system a rationality such that a fine or penalty should reflect the gravity or moral reproachability of a particular crime. One might wonder, and rightly so, why the legislature singled out underage drinking as deserving of a truly "special" penalty, whereas other offenses committed by juveniles such as vandalism, shoplifting, disorderly conduct, loitering, etc., receive a much different penalty. Indeed, if the focus is on the intractable nature of juvenile deterrence, then removal of one's license might serve the much-needed deterrent function with respect to each of these crimes, yet there appears no rational reason to afford one crime, but not the other, separate treatment. Perhaps most troublesome is that when selection of a penalty is arbitrary, the public, as well as the individual offender, is more prone to perceive the penal system as arbitrary in punishing for offenses not committed. Moreover, the offense of driving while intoxicated already commands a significant penalty which presumably serves a considerable deterrent function. Thus, without an indication that the crime of underage drinking was accompanied by the operation of a motor vehicle, the mere fact that drinking is associated with driving in the abstract will not suffice to supply the requisite rationality.

The two Pennsylvania Commonwealth Court cases relied on by the majority in defense of the "deterrent" interest are, at least, inapposite; at most, they argue against rather than for the majority position. In both cases the means utilized by the state (suspension of driver's license), was rationally related to a violation of the motor vehicle code. In *Lemon, supra,* the defendant was convicted of 75 Pa.C. S.A. § 211(a) for possession of a forged inspection certificate; in *Deems, supra,* the defendant was convicted of 75 Pa.C.S.A. § 304 for the sale of a vehicle with defaced numbers. Thus, while the state might have had a deterrence interest in preventing such activity, the suspension of a driver's license was entirely reasonable since the crimes involved the unlawful operation or sale of a motor vehicle.

Instantly, while the majority found a "deterrent" interest supported by the penalty of license suspension, I am hard-pressed to fathom a penalty which, assuming the appropriate severity, does not serve a similar function. With this as the standard, I see no standard at all. Moreover, our task, contrary to the majority's interpretation, is not to ignore the express relationship offered by the legislature and immediately hypothesize as to possible rational relationships. A plain interpretation of the statute confirms a relationship as between the offense of underage possession of brewed beverages and the penalty of, *inter alia,* suspension of operator's privileges.[2] Our task must be to ascertain whether the relationship was reached in an arbitrary manner. To be sure, ignoring the rationality of the relationship might be to further to some degree a serious problem with juvenile crime. But without a coherent limiting principle, the doctrine announced by the majority today has much

**2.** Appellant pleaded guilty to charges under section 6308(a) of underage purchase, consumption, possession or transportation of brewed beverages. Section 6308(b), the penalty provision, provides:
   In addition to the penalty imposed pursuant to section 6310.4 (relating to restriction of operating privileges), a person convicted of violating section (a) ... [may be sentenced to pay a fine]. Section 6310.4 provides:
   Whenever a person is convicted [of section] ... 6308 ... the court ... shall order the operating privilege of the person suspended.

graver implications beyond the facts at bar. I fear that the majority, by offering its imprimatur, sanctions judicial tolerance of arbitrary forms of penology and thereby paves the way for analogous laws.[3] The potential of breeding public distrust and lack of confidence in the soundness of law enforcement is manifest. As a result, I cannot join the majority opinion and would hold 18 Pa.C.S.A. § 6310.4 an arbitrary legislative enactment since violation may occur irrespective of the operation of a motor vehicle, and yet the statutory penalty includes suspension of operator's privileges.

[3] The test of "rational relationship" as defined by the "deterrence" rationale is not logically cabined solely to the offense of underage drinking or offenses committed by minors. Consider a legislature desirous of deterring juvenile vandalism. Under today's rationale, and owing to the intractable nature of juvenile deterrence, the legislature might rationally consider suspension of operator's privileges as an effective deterrent. Following like reasoning, the legislature might penalize public drunkenness or disorderly conduct or loitering with suspension of operator's privileges. To be sure, these are but a few examples. Troublesome with the "deterrence" rationale is that its limits are largely defined by the ingenuity of legislators, not by the test of rationale relationship under the substantive component to the Due Process Clause.