**STATE of Alaska, Department of Public Safety, Division of Motor Vehicles, Appellant,**

v.

**Patrick NIEDERMEYER, Appellee.**

No. S–8239.

Supreme Court of Alaska.

Dec. 15, 2000.

---

Eric A. Johnson and Timothy W. Terrell, Assistant Attorneys General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellant.

William H. Ingaldson, Ingaldson Maassen, P.C., Anchorage, for Appellee.

Before MATTHEWS, Chief Justice, EASTAUGH, FABE, and BRYNER, Justices.

## OPINION

BRYNER, Justice.

### I. INTRODUCTION

The Department of Motor Vehicles (DMV) revoked Patrick Niedermeyer's driver's license after Niedermeyer was arrested for underage consumption of alcohol. Because DMV's administrative revocation was punitive, and because DMV acted without the safeguards that attend a criminal prosecution, Niedermeyer's right to due process was violated and his suspension must be overturned.

### II. FACTS AND PROCEEDINGS

On July 4, 1995, Patrick Niedermeyer was arrested at a cabin for underage consumption of alcohol. There was never any allegation that Niedermeyer had previously driven after consuming alcohol or intended to drive on the evening of his arrest. Following the arrest, Niedermeyer's arresting officer read him the "Under 21 Notice of Revocation," in accordance with former AS 28.15.183. That notice said:

> YOUR DRIVER'S LICENSE OR PRIVILEGE TO DRIVE IN THIS STATE IS REVOKED. THIS IS YOUR OFFICIAL NOTICE OF REVOCATION. THIS REVOCATION WILL TAKE EFFECT 7 DAYS AFTER THE DATE SHOWN ABOVE, UNLESS YOU REQUEST AN ADMINISTRATIVE REVIEW OF THE REVOCATION. INFORMATION ON THE REVERSE SIDE OF THIS FORM TELLS YOU HOW TO APPLY FOR THIS REVIEW.[1]

---

1. Former AS 28.15.183 stated that

 [i]f a peace officer has probable cause to believe that a person who is at least 14 years of age but not yet 21 years of age has possessed or used [alcohol or illegal drugs, driven drunk or refused a breath test] and the peace officer has cited the person or arrested the person for a violation [of underage consumption or drug laws], the peace officer shall read a notice and

 deliver a copy to the person. The notice must advise that
 (1) the department intends to revoke the person's driver's license or permit, privilege to drive, or privilege to obtain a license or permit;
 (2) the person has the right to administrative review of the revocation;
 (3) if the person has a driver's license or permit, the notice itself is a temporary driver's

Niedermeyer requested administrative review of his license revocation. After conducting telephonic hearings, DMV affirmed the revocation.

Niedermeyer appealed to the superior court. Judge Eric T. Sanders reversed the revocation, finding former AS 28.15.183 unconstitutional for the reasons stated in *Quinn v. State, Department of Public Safety,*[2] a similar case decided by another superior court judge. The state appealed the superior courts' rulings in both the *Quinn* and *Niedermeyer* cases. We initially stayed the appeal in this case pending our decision in *Quinn,* but reactivated this appeal after summarily affirming *Quinn* by an evenly divided vote.[3] On appeal, the state claims that the superior court erred in declaring Alaska's former AS 28.15.183 unconstitutional.

## III. DISCUSSION

### A. Standard of Review

■ The constitutionality of former AS 28.15.183 is a legal question to which this court applies its independent judgment.[4]

### B. Mootness

■ The state did not prosecute Niedermeyer for unlawful possession or consumption of alcohol. Because recent amendments to AS 28.15.183 now require DMV to reissue a minor's revoked license if the state fails to prosecute the underlying criminal offense or if a prosecution ends in dismissal or acquittal,[5] the only live controversy in this case is the award of prevailing-party attorney's fees. We must nevertheless address the merits of the parties' constitutional arguments, for we have previously held that we "will review an

otherwise moot issue to determine who the prevailing party is if such a determination is necessary for purposes of awarding attorney's fees."[6]

### C. Substantive Due Process

■ The superior court, incorporating *Quinn's* reasoning, found that former AS 28.15.183 violates substantive due process because its age-based restriction is not rationally related to a valid legislative purpose. Niedermeyer urges us to uphold this ruling. He insists that there is no close or obvious connection between underage possession or consumption of alcohol and dangerous driving. But substantive due process demands no direct connection of this kind; the substantive due process requirement allows a law to pass muster as long as it bears any rational relation to a legitimate legislative goal:

> Substantive due process is denied when a legislative enactment has no reasonable relationship to a legitimate governmental purpose. It is not a court's role to decide whether a particular statute or ordinance is a wise one; the choice between competing notions of public policy is to be made by elected representatives of the people. The constitutional guarantee of substantive due process assures only that a legislative body's decision is not arbitrary but instead based upon some rational policy.[7]

Under this minimal test, even a modest statistical increase in accident rates might give the legislature a rational basis for action aimed at discouraging potential underage drivers from possessing or drinking alcohol. And previously recognized traffic studies seem to suggest that this kind of increased

license or permit that expires seven days after it is delivered to the person;
(4) revocation of the person's driver's license or permit, privilege to drive, or privilege to obtain a license or permit, takes effect seven days after delivery of the notice to the person unless the person, within seven days, requests an administrative review.

**2.** No. 3AN–95–8805–CI (Alaska Super., February 13, 1997).

**3.** *State of Alaska v. Quinn,* No. S–8003, Alaska Supreme Court Order dated March 3, 1999.

**4.** *See Rollins v. State, Dep't of Revenue, Alcoholic Beverage Control Bd.,* 991 P.2d 202, 206 (Alaska 1999); *Turney v. State,* 936 P.2d 533, 538 (Alaska 1997).

**5.** *See* AS 28.15.183(i)(2).

**6.** *Bruner v. Petersen,* 944 P.2d 43, 47 n. 4 (Alaska 1997).

**7.** *Concerned Citizens of S. Kenai Peninsula v. Kenai Peninsula Borough,* 527 P.2d 447, 452 (Alaska 1974) (citation omitted).

risk does exist.[8] But even without statistical evidence to confirm an increased risk, the legislature might have had a rational basis to enact former AS 28.15.183 as a purely precautionary measure. After all, the same concerns that motivate traditional legal restrictions on the minimum ages for drinking and for driving—concerns over immaturity, inexperience, and unsound judgment—might also support a logical belief that minors lacking sufficient judgment to obey laws governing possession and consumption of alcohol will generally be more likely than others to lack sufficient judgment to drive carefully or to abstain from drinking before driving.

As the state argues in its briefing, a chain of rational inferences can be forged to link underage drinking to dangerous driving: a minor who possesses or consumes alcohol might do so again in the future; minors cannot be trusted to handle alcohol in a mature and socially acceptable manner; and minors who consume alcohol might drive under the influence of alcohol. Though this inferential nexus may be tenuous, it is nonetheless rational. Accordingly, we cannot dismiss as arbitrary or irrational the legislature's decision to restrict the driving privileges of minors cited for illegal possession and consumption.[9]

■ The state's failure to present affirmative evidence proving the existence of a nexus between underage drinking and dangerous driving does not alter this conclusion; rather, the heavy burden of proving that the legislature acted irrationally falls on Niedermeyer:

A court's inquiry into arbitrariness begins with the presumption that the action of the legislature is proper. The party claiming a denial of substantive due process has the burden of demonstrating that no rational basis for the challenged legislation exists. This burden is a heavy one, for if any conceivable legitimate public policy for the enactment is apparent on its face or is offered by those defending the enactment, the opponents of the measure must disprove the factual basis for such a justification.[10]

Thus, absent convincing evidence refuting any potential correlation between underage drinking and driving safety—and Niedermeyer presents no such evidence—we find no basis for declaring that former AS 28.15.183 denies substantive due process.[11]

## D. Procedural Due Process

■ The superior court also found former AS 28.15.183 unconstitutional because it violates procedural due process by not adhering to constitutionally prescribed criminal procedures. In reaching this conclusion, the court found that the statute is punitive in nature, rather than remedial, and that Niedermeyer therefore has a right to the procedural safeguards that normally protect the rights of a person accused in a criminal proceeding.

On appeal, Niedermeyer argues that the superior court correctly decided this issue. DMV responds that criminal safeguards are unnecessary because former AS 28.15.183's purpose was to remove unfit drivers from the

**8.** *See, e.g., Rexford v. State,* 941 P.2d 906, 907 (Alaska App.1997). *But cf. State v. Esmailka,* 961 P.2d 432, 434 (Alaska App.1998) (involving a defendant who challenged the validity of the studies underlying *Rexford*).

**9.** *Accord In re Appeal in Maricopa County Juvenile Action No. JV–114428,* 160 Ariz. 90, 770 P.2d 394, 395 (App.1989).

**10.** *Concerned Citizens of S. Kenai Peninsula,* 527 P.2d at 452 (citations omitted).

**11.** *Accord Maricopa County,* 770 P.2d at 396–97. The superior court also ruled that because the conduct sanctioned by former AS 28 .15.183 bears no relationship to the sanction imposed, a 90 day license revocation amounts to cruel and unusual punishment, in violation of the Eighth

Amendment. Although Niedermeyer does not pursue his claim of cruel and unusual punishment on appeal, our conclusion that the statute is sufficiently rational to comply with the requirements of substantive due process compels us to reverse on this point, as well. For constitutional purposes, punishments are cruel and unusual only if they are "inhuman or barbarous, or so disproportionate to the offense committed as to be completely arbitrary and shocking to the sense of justice." *Thomas v. State,* 566 P.2d 630, 635 (Alaska 1977) (quoting *Green v. State,* 390 P.2d 433, 435 (Alaska 1964)). Under this stringent standard, a three-month license revocation for the crime of underage drinking is not cruel and unusual.

roads, not to punish underage drinking. But at best the statute sends a mixed message, for it accomplishes its purported regulatory goal by punishing criminal conduct that has no obvious connection to driving.

To be sure, revoking a driver's license does not always equate to imposing a criminal sanction. In *Baker v. City of Fairbanks*,[12] we defined criminal prosecutions to include the trial of offenses that "may result in the loss of a valuable license, such as a driver's license."[13] We then qualified this definition by carving out an exception for administrative revocations based on conduct that demonstrates unfitness to drive:

> [The category of "criminal" prosecutions] does not cover revocation of licenses pursuant to administrative proceedings where lawful criteria other than criminality are a proper concern in protecting public welfare and safety, as the basis of revocation or suspension in such instances is not that one has committed a criminal offense, but that the individual is not fit to be licensed, apart from considerations of only guilt or innocence of crime.[14]

*Baker* thus establishes that when an agency revokes a driver's license, its action can be either a criminal sanction or an administrative measure, depending on whether the revocation is based on the commission of an offense or on conduct that demonstrates unfitness to drive. But *Baker* leaves open a difficult question: should a revocation be treated as a criminal sanction or an administrative measure when the DMV bases its action on conduct that amounts to the commission of a criminal offense but that also reflects on the offender's fitness to drive? This is the critical question at issue here.

The Alaska Court of Appeals took a long stride toward resolving this question in *State v. Zerkel*.[15] There, that court considered whether an administrative license suspension is a criminal penalty for double jeopardy purposes when the suspension is based on an arrest for driving while intoxicated (DWI) or on a charge of refusal to take a breath test following an arrest for DWI.[16] After examining this court's decision in *Baker* and the United States Supreme Court's recent double jeopardy case law,[17] the *Zerkel* court turned to the purpose and impact of license suspensions based on DWI offenses, ultimately concluding that suspensions for DWI or breath-test refusals did not amount to criminal sanctions.[18] In holding that such suspensions are regulatory actions despite being based on criminal conduct, the court identified the determining factor to be the direct relationship between the criminal conduct—drunken driving—and the DMV's primary regulatory goal—removing unfit drivers from the road:

> [W]hen the government employs a licensing scheme to regulate a profession or an activity that affects the public welfare, administrative revocation or suspension of that license can legitimately serve to deter conduct and still remain "remedial" for double jeopardy purposes *so long as the revocation or suspension is based on conduct that bears a direct relation to the government's regulatory goals* or to the proper administration and enforcement of the regulatory scheme.[19]

*Zerkel's* insistence on this narrowly tailored means-to-end fit—on the existence of a direct relation between the DMV's regulatory goals and the conduct that triggers the agency's licensing action—successfully harmonizes Alaska's administrative treatment of DWI license suspensions with *Baker*.

*Zerkel's* direct-relationship test also fits well with the United States Supreme Court's bright-line view of punitive action. In *Aus-*

---

12. 471 P.2d 386 (Alaska 1970).

13. *Id.* at 402.

14. *Id.* at 402, n. 28.

15. 900 P.2d 744 (Alaska App.1995).

16. *See id.* at 745–46.

17. *See id.* at 749–51 (discussing *Montana Dep't of Revenue v. Kurth Ranch*, 511 U.S. 767, 114 S.Ct.

1937, 128 L.Ed.2d 767 (1994), *Austin v. United States*, 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993), and *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989)).

18. *See id.* at 755–58.

19. *Id.* at 757 (emphasis added).

*tin v. United States,*[20] the Supreme Court explained that a " 'civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.' "[21] The court in *Zerkel* acknowledged that despite the direct relationship between drunk driving and the DMV's remedial goal of removing unfit drivers from the road, administrative DWI revocations can have a punitive effect that deters DWI offenders from committing further offenses.[22] But the court deemed this effect to be incidental to the direct, remedial effect of the DMV action.[23] *Zerkel* thus held that administrative license revocation for DWI offenses is in essence *solely* a remedial measure.[24]

We agree with *Zerkel's* interpretation. Because driving while intoxicated necessarily demonstrates poor driving judgment, there is no inferential leap—no intermediate logical gap that needs bridging—between the driver's conduct and the administrative goal served by license revocation. The act of driving while intoxicated is by definition an act of impaired driving, and the attendant criminal sanctions for the crime accurately reflect the resulting risk to public safety. Thus, an indelible inference of unfitness to drive arises directly from the conduct comprising the offense. Simply put, driving while intoxicated is unfit driving. Consequently, commission of the offense necessarily justifies DMV licensing action.[25]

By contrast, the direct connection between the alleged offense and DMV's regulatory goal of removing unfit drivers from the road vanishes when the agency revokes a license for underage possession or drinking. Under former AS 28.15.183, a minor's possession or consumption of alcohol need have no connection to driving; hence, the conduct triggering revocation does not necessarily, or even probably, reflect on the arrested minor's fitness to drive.

At most, the minor's unlawful conduct reflects a possibility of increased danger: it suggests that the minor belongs to a class of young drivers who generally pose a higher statistical risk than other young drivers. Thus, while the behavioral gap between underage drinking and unfit driving can be bridged by a chain of rational inferences that is strong enough to withstand the minimal test of substantive due process,[26] this roundabout connection is not the direct and necessary link that must exist before an administrative revocation will be considered non-punitive.

In the case at hand, for example, former AS 28.15.183 did nothing to tailor its sanction to the specific facts of Niedermeyer's case. There is no case-specific evidence suggesting that Niedermeyer, who was arrested in a cabin, posed any risk of bad driving—or that he intended to drive at all. The challenged statute did not require the state produce

---

20. 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).

21. *Id.* at 621, 113 S.Ct. 2801 (quoting *Halper,* 490 U.S. at 448, 109 S.Ct. 1892 (emphasis added in *Austin* )).

22. *Zerkel,* 900 P.2d at 755–57.

23. *See id.* at 755–58.

24. Although *Austin* dealt with the United States Constitution's excessive fines clause rather than with double jeopardy, *Zerkel* read that case as supporting its conclusion that an administrative license suspension in a DWI case does not qualify as a criminal sanction for double jeopardy purposes. *See Zerkel,* 900 P.2d at 749–51. We note that, more recently, the United States Supreme Court has made it clear that the excessive fines clause analysis it set forth in *Austin* does

not apply in the double jeopardy context. *See United States v. Ursery,* 518 U.S. 267, 287, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). Since Niedermeyer's case presents no double jeopardy issue, the point is immaterial here.

25. An administrative license suspension serves a somewhat different regulatory goal in breath-test refusal cases, but a goal that connects just as seamlessly to the conduct comprising the offense. In such cases, because a motorist who obtains a driver's license impliedly consents to take a breath test, "[r]efusal to submit to the test [is] deemed tantamount to a withdrawal of the consent upon which the privilege to drive [has] been conditioned, justifying state revocation of the driver's license." *Lundquist v. Department of Pub. Safety,* 674 P.2d 780, 783 (Alaska 1983).

26. *See* discussion of Niedermeyer's substantive due process argument, *supra* Part III.C.

such evidence. Beyond that, it explicitly forbade Niedermeyer from offering, in his own defense, any case-specific evidence of fitness to drive or sound judgment.[27]

Traffic studies do suggest that Niedermeyer's conduct places him in a class of minors who tend to drive more carelessly than other minors.[28] But the statistics contained in those studies only describe the general behavior of a broad class of young drivers. Naked numbers cannot predict the conduct of any individual driver; they do not address the specific circumstances of Niedermeyer's case; and they say nothing concerning his personal driving behavior. Because statistics that generally correlate underage drinking and bad driving fail to establish that Niedermeyer himself is unfit to drive, they cannot, standing alone, justify remedial action based on his demonstrated unfitness to drive.

Thus, by relying on such tenuous and generalized inferences of unfitness, former AS 28.15.183 assumed the attributes of a punitive measure; for it "cannot fairly be said *solely* to serve a remedial purpose."[29] Underage drinking has traditionally been regarded as criminal misconduct;[30] many members of the community attach significant social and moral opprobrium to the conduct; and the statutorily prescribed consequence of immediate license revocation unquestionably amounts to a severe sanction. Because the statute imposes a harsh, mandatory penalty for misconduct that has no necessary or close relation to bad driving, its sanction will naturally be seen not as a remedial measure addressing traffic safety, but as punishment aiming directly at the underlying offense— underage possession or consumption of alcohol or drugs. Punishment of this kind "is the implicit *sine qua non* of a 'criminal prosecution.' "[31]

Given these circumstances, our case law interpreting the Alaska Constitution compels the conclusion that former AS 28.15.183 imposed a criminal sanction.[32] To revoke a license under circumstances amounting to criminal punishment, the state must offer appropriate procedural safeguards; as we explained in *Baker*, the state may not impose criminal punishment without criminal process.[33]

Courts in other states have allowed license suspension to follow automatically from drug or underage drinking offenses.[34] But the

27. AS 28.15.184(g) provides:
The hearing for review of a revocation by the department under AS 28.15.183 *shall be limited* to the issues of whether the person was at least 14 years of age but not yet 21 years of age and whether the person possessed or used a controlled substance . . . or possessed or consumed alcohol. . . .
(Emphasis added.)

28. *See, e.g., Rexford v. State*, 941 P.2d 906, 907 (Alaska App.1997).

29. *Austin v. United States*, 509 U.S. 602, 620, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) (quoting *United States v. Halper*, 490 U.S. 435, 448, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989) (emphasis added in *Austin*)).

30. *See, e.g., State v. District Court*, 927 P.2d 1295, 1296–97 (Alaska App.1996).

31. *State, Dep't of Revenue v. Beans*, 965 P.2d 725, 730 n. 8 (Alaska 1998).

32. *See Baker v. City of Fairbanks*, 471 P.2d 386, 393 (Alaska 1970). Our conclusion does not conflict with the court of appeals's decision in *Rexford v. State*, 941 P.2d 906 (Alaska App.1997). Although the court in *Rexford* held that an administrative revocation under AS 28.15.183 did not amount to criminal punishment for double jeopardy purposes, Niedermeyer's case does not present a double jeopardy issue and therefore does not require us to consider the point decided in *Rexford. See id.* at 907; *see also supra* note 24. Moreover, the court in *Rexford* limited its decision to the unique procedural circumstances of the case before it, noting that Rexford had not submitted any appellate briefing and had consequently failed to challenge the trial court's findings concerning the statute's remedial purpose. *Rexford*, 941 P.2d at 907.

33. 471 P.2d at 401.

34. *See, e.g., In re Appeal in Maricopa County Juvenile Action No. JV–114428*, 160 Ariz. 90, 770 P.2d 394, 395 (App.1989); *People v. Valenzuela*, 3 Cal.App.4th Supp. 6, 5 Cal.Rptr.2d 492, 493 (1991); *People v. Zinn*, 843 P.2d 1351, 1353–55 (Colo.1993); *Plowman v. Commonwealth, Dep't of Transp., Bureau of Driver Licensing*, 535 Pa. 314, 635 A.2d 124, 127–28 (1993); *Commonwealth v. Strunk*, 400 Pa.Super. 25, 582 A.2d 1326, 1326–27 (1990); *State v. Shawn P.*, 122 Wash.2d 553, 859 P.2d 1220, 1221 (1993) (en banc). *But see Johnson v. State Hearing Examiner's Office*, 838 P.2d 158, 177–78 (Wyo.1992) (determining such an arrangement violated prohibitions on cruel and unusual punishment).

laws in those states uniformly require that a conviction precede the punishment. In upholding their statutes as constitutional, the courts in those states have explained that the revocation of a driver's license is rationally related to a legitimate state interest precisely *because* it punishes and deters illegal alcohol or drug use.[35] Thus, those decisions tend to confirm our conclusion that former AS 28.15.183 must be viewed as imposing a criminal penalty.[36]

Here, because the state failed to offer Niedermeyer the safeguards of criminal process that normally apply to criminal punishment, we affirm the superior court's conclusion that Niedermeyer's license was revoked without due process of law.

### E. *Vagueness*

 Niedermeyer further argues that, by basing license revocation on the act of "possession" of alcohol, former AS 28.15.183 introduces an element of unconstitutional vagueness. A statute may be void for vagueness if its language fails to "give adequate notice of the conduct that is prohibited" or if its "imprecise language encourages arbitrary enforcement by allowing prosecuting authorities undue discretion to determine the scope of its prohibitions."[37] Applying this standard, we find no constitutional deficiency here. "Possession" is a common term with a generally accepted meaning:[38] having or holding property in one's power; the exercise of dominion over property. This meaning provides adequate notice of the prohibited conduct.[39] Niedermeyer asserts that the statute's use of the undefined term "possession" is sufficiently vague to invite inconsistent enforcement. But we will not invalidate a statute on this basis " 'absent evidence of a history of arbitrary or capricious enforcement.' "[40] Since Niedermeyer failed to present evidence suggesting a history of arbitrary enforcement, we must overturn the superior court's finding of vagueness.

### IV. *CONCLUSION*

Although former AS 28.15.183 has an indirect remedial purpose sufficient to insulate it from a substantive due process challenge, its direct effect is to punish underage possession and consumption of alcohol and drugs—conduct traditionally punishable only by criminal process. Because Niedermeyer's license was revoked without attendant criminal process, we AFFIRM the superior court's judgment.

CARPENETI, Justice, not participating.

**35.** *See, e.g., Maricopa County,* 770 P.2d at 397; *Valenzuela,* 5 Cal.Rptr.2d at 492–93; *Zinn,* 843 P.2d at 1354; *Plowman,* 635 A.2d at 127; *Strunk,* 582 A.2d at 1329–30; *Shawn P.,* 859 P.2d at 1222.

**36.** We note that AS 28.15.183, as recently amended, appears to move in the direction taken in these other states, since Alaska's statute now requires the DMV to reinstate a revoked driver's license if the underlying offense is not prosecuted, is dismissed, or results in a not guilty verdict. *See* AS 28.15.183(i)(2). Because the amended version of the statute is not at issue in this case, we express no opinion concerning its validity.

**37.** *Summers v. Anchorage,* 589 P.2d 863, 867 (Alaska 1979) (citations omitted).

**38.** "[U]nless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning." *Bachlet v. State,* 941 P.2d 200, 205 (Alaska App.1997) (quoting *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 62 L.Ed.2d 199 (1979)).

**39.** *Cf. State v. Rice,* 626 P.2d 104, 109 (Alaska 1981) (statute prohibiting illegal possession or transportation of game not unconstitutionally vague).

**40.** *Summers,* 589 P.2d at 868 (quoting *Levshakoff v. State,* 565 P.2d 504, 507 (Alaska 1977)).