**Stephanie R. KOCHER and Patrick G. Kocher, Petitioners,**

v.

**Rebecca L. BICKLEY, Director, Bureau of Driver Licensing of the Department of Transportation of the Commonwealth of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 30, 1998.

Decided Jan. 5, 1999.

Stephanie and Patrick Kocher, petitioners, pro se.

Matthew X. Haeckler and Timothy P. Wile, Asst. Counsel In-Charge, Harrisburg, for respondent.

Before McGINLEY, J., PELLEGRINI, J., and LORD, Senior Judge.

PELLEGRINI, Judge.

Before this Court are preliminary objections filed by the Bureau of Driver Licensing of the Department of Transportation (Department) to a petition for review in the nature of mandamus filed by Stephanie R. Kocher and Patrick G. Kocher (collectively, Applicants) seeking to have the Department issue "learner's" permits to them without having to supply a social security number.[1]

Applicants applied to the Department for learner's permits, seeking to eventually be issued a Pennsylvania driver's license.[2] To

obtain a learner's permit, Section 1510 of the Vehicle Code requires, *inter alia*, that each applicant for a driver's license provide his or her social security number, or, in the alternative, obtain a waiver from the federal government permitting him or her not to have a social security number. 75 Pa.C.S. §§1510(a) and (f).[3] It also provides that the Department may require other identifiers including but not limited to a taxpayer identification number before issuing the license. 75 Pa. C.S. §1510(f). Because Applicants did not provide a social security number, a waiver from the federal government, or a taxpayer identification number, the Department refused to issue them learner's permits.

In response to the Department's denial, Applicants have filed a petition for review in the nature of mandamus[4] in this Court's original jurisdiction seeking an order to compel the Department to issue them learner's permits without requiring them to provide waivers or submit social security numbers. They contend that social security for them violates a biblical principle that

* * *

(f) *Waiver*—Notwithstanding the provisions of subdivision (a), the department shall issue a driver's license to an otherwise eligible person who has no social security number if the person submits a waiver obtained from the Federal Government permitting him not to have a social security number. The Department may require other identifiers, including, but not limited to, a taxpayer identification number, before issuing the license.

4. Mandamus is an extraordinary remedy that is designed to compel the performance of a ministerial or mandatory duty on the part of a governmental body, but will not lie to compel a discretionary act on the part of the governmental body. *Green v. Tioga County Board of Commissioners*, 661 A.2d 932 (Pa.Cmwlth.1995). To obtain relief, a plaintiff must prove that he or she has a clear legal right in the relief requested, that there is a corresponding duty on the part of the governmental body to grant that relief, and that there is no other adequate and appropriate remedy at law. *Id.* While mandamus may not normally be available for actions that involve an agency's exercise of discretion, it may lie where the agency's action is based upon a mistaken view of the law that it has discretion to act when it actually does not. *Weaver v. Pennsylvania Board of Probation and Parole*, 688 A.2d 766 (Pa.Cmwlth.1997)*; County of Allegheny v. Commonwealth*, 507 Pa. 360, 490 A.2d 402 (1985*).

1. 42 U.S.C. §405(c)(2)(C)(i) provides that:

It is the policy of the United States that any state ... may, in the administration of any tax, general public assistance, *driver's license*, or motor vehicle registration law within its jurisdiction utilize the [social security numbers] issued by the Secretary for the purpose of establishing the identification of individuals affected by such law, and may require any individual who is or appears to be so affected to furnish to such State ... or any agency thereof having administrative responsibility for the law involved, the [social security number] ... issued to him. (Emphasis added).

2. Section 1505 of the Vehicle Code, 75 Pa.C.S. §1505, provides that a person who desires to obtain a learner's permit should apply to the Department for the class or classes of driver's licenses in which the person desires to be licensed.

3. Section 1510 of the Vehicle Code, 75 Pa.C.S. §1510, provides in relevant part:

(a) *General Rule*—The Department shall, upon payment of the required fee, issue to every qualified applicant a driver's license ... *Except as provided in subsection (f), an applicant shall include his social security number on his license application, but the social security number shall not be included on the license.* No driver's license shall be valid until it has been signed by the licensee. (Emphasis added).

parents of the family were to provide for the children, not the children for the parents.[5] Because of their religious objections to participation in the social security system, Applicants allege that they cannot be compelled to either obtain from the federal government a waiver not to participate in the system or to obtain a social security number.[6] They also allege that that they cannot obtain taxpayer identification numbers because such numbers are only issued to resident aliens. As to their clear right to relief requiring the Department to issue them learner's permits, Applicants allege that "mobility is an essential part of independence, liberty and pursuit of happiness and necessary for the acquisition of property" as guaranteed by the Constitution of the Commonwealth of Pennsylvania, and the denial by the Department of the issuance of learner's permits was a violation of this right. Because the requirement to obtain a social security number violates their religious rights and their "right" to mobility, Applicants contend that the Department has a non-discretionary duty to issue learner's permits without them obtaining social security numbers or waiver from participation required by Section 1510 of the Vehicle Code.

The Department has filed preliminary objections to Applicants' petition for review contending that the petition should be dismissed because Applicants have no clear legal right to the relief requested because they can obtain a taxpayer identification number, and even if they cannot, requiring

Applicants to submit waivers from the federal government in lieu of obtaining social security numbers is not tantamount to compelling participation in the social security system. Additionally, it argues that there are state interests that justify any impingement of religious rights created by the requirement to obtain a waiver or social security number. Because there was no unconstitutional impingement on any of Applicants' religious rights, the Department contends it was correct in denying issuance of learner's permits because Applicants have failed to provide social security numbers, waivers or taxpayer identification numbers as required under Section 1510 of the Vehicle Code.[7]

■ Initially, the Department contends that because the Vehicle Code allows the Applicants to provide federal taxpayer identification numbers as an alternative to providing a social security number, their action should be dismissed because even Applicants do not maintain that such identifiers would violate any of their free exercise rights. What this argument ignores, as Applicants have pointed out, is that the federal regulations provide that taxpayer identification numbers are only issued to non-citizens of the United States [8] who are ineligible to participate in the social security system.[9] Because Applicants are not non-resident aliens and are eligible for social security and, as such, cannot obtain taxpayer identification numbers, providing those numbers cannot

---

5. In their petition, Applicants stated that they conscientiously object to the social security system because in 2 Corinthians 12:14(KJV), the apostle Paul writes, "... for the children ought not lay up for the parents, but the parents for the children" and social security is a direct violation of this principle.

6. The Department has not filed a preliminary objection contending that mandamus is not the proper procedure for testing the constitutionality of a statute, *see Jamieson v. Pennsylvania Board of Probation and Parole*, 90 Pa.Cmwlth. 318, 495 A.2d 623 (Pa.Cmwlth.1985), or that an adequate administrative remedy exists, *Parsowith v. Com., Dept. of Revenue*, 702 A.2d 1107 (Pa.Cmwlth. 1997).

7. Our scope of review of preliminary objections in the nature of a demurer is to determine whether on the facts alleged, the law states with

certainty that no recovery is possible. *Rouse & Associates–Ship Road Land Limited Partnership v. Pennsylvania Environmental Quality Board*, 164 Pa.Cmwlth. 326, 642 A.2d 642 (Pa.Cmwlth. 1994). In ruling on the preliminary objections, the Court must consider the evidence in the light most favorable on the non-moving party, i.e., Applicants. *Derman v. Wilair Services, Inc.*, 404 Pa.Super. 136, 590 A.2d 317 (Pa. Superior Ct.), *petition for allowance of appeal denied*, 529 Pa. 621, 600 A.2d 537 (1991). If the grant of preliminary objections will result in the dismissal of the case, the objection should be sustained only if it is clear and free from doubt. *Zinc Corporation of America v. Dept. of Environmental Resources*, 145 Pa.Cmwlth. 363, 603 A.2d 288 (Pa.Cmwlth. 1992), *aff'd*, 533 Pa. 319, 623 A.2d 321 (1993).

8. 26 C.F.R. §301.6109–1(d)(3).

9. 26 CFR §301.6109–1(d)(4).

serve as an alternative to providing a social security number.

■ Even if they cannot obtain a taxpayer identification number, the Department contends Applicants do not have a clear right to relief because compelling them to seek a waiver or, for that matter to obtain a social security number, does not violate their free exercise of religion rights. To determine whether religious rights are unconstitutionally impinged, there are no bright line tests, but instead an analysis is made of the statute at issue and a balancing of the interests involved. In that regard, the United States Supreme Court has stated that although religious freedom has an important place in our scheme of ordered liberty,[10] it also steadfastly maintains that claims of religious convictions do not automatically entitle a person to fix unilaterally the conditions and terms of dealings with the government. *Bowen v. Roy*, 476 U.S. 693, 106 S.Ct. 2147, 90 L.Ed.2d 735 (1986). The right of free exercise does not relieve an individual of the obligation to comply with a neutral, generally applicable law on the grounds that the law affects religious practices, even if it is not supported by a compelling state interest. *Employment Div., Dept. of Human Resources of Oregon v. Smith*, 494 U.S. 872, 110 S.Ct. 1595, 108 L.Ed.2d 876 (1990); *see also City of Boerne v. Flores*, 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624 (1997). Absent a showing that the legislation facially discriminates against a particular religious belief or against religion in general, the government meets its burden when it demonstrates that the challenged requirement for governmental benefits is neutral and uniform, unless it is not rationally related to any legitimate public interest, the burden of which is to challenge and establish that the requirement of the regulation is valid. *See Smith; see also Nordlinger v. Hahn*, 505 U.S. 1, 112 S.Ct. 2326, 120 L.Ed.2d 1 (1992) (a regulatory statute without unconstitutional classifications is accord-

ed a strong presumption of validity and is valid if there is a rational basis for the law, i.e., it is reasonably related to accomplishing a legitimate state interest).

With regard to whether the requirement that individuals participate in the social security system violates the free exercise clause of the First Amendment of the United States Constitution, the United States Supreme Court in *United States v. Lee*, 455 U.S. 252, 102 S.Ct. 1051, 71 L.Ed.2d 127, (1982) held that requiring participation was not unconstitutional. In *Lee*, the Court upheld the imposition of social security taxes on an Amish employer who failed to pay taxes on his own behalf or to withhold taxes from the wages of his Amish employees because of his religious beliefs that the Amish community and not the government should provide for the kind of assistance contemplated by the social security system. Recognizing that the religious beliefs of the Amish employer were in conflict with the social security system, the Supreme Court held that "[r]eligious beliefs can be accommodated, but there is a point at which accommodation would 'radically restrict the operating latitude of the legislature.'" *Id.* at 259, 102 S.Ct. 1051 (*quoting Braunfeld v. Brown*, 366 U.S. 599, 606, 81 S.Ct. 1144, 6 L.Ed.2d 563 (1961)). The Court concluded that although participation in the social security system interfered with Lee's free exercise rights, the government had a compelling interest in enforcing mandatory participation in the social security system in order to insure the "fiscal viability" of a system designed to serve the social welfare and in preventing individuals from seeking waivers without a valid basis or an established system on which to depend. Requiring mandatory participation was found to be the least restrictive means of achieving those interests because, "widespread individual voluntary coverage under social security ... would undermine the soundness of the social security program" and would be impossible to administer. *Id.* at 258, 102 S.Ct. 1051.

---

**10.** The First Amendment of the United States Constitution provides in part that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof ..." This provision is enforceable against the states though the Due Process Clause of the Fourteenth Amendment. *Cantwell v. Connecti-*

*cut*, 310 U.S. 296, 303, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Because the Free Exercise Clause guarantees that citizens can believe and profess their sincerely-held religious beliefs, this clause prohibits government regulation of religious beliefs as such. *Sherbert v. Verner*, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963).

While the Constitution did not mandate such exceptions for all individuals professing contrary religious beliefs, the Supreme Court held that nothing foreclosed Congress from granting an exemption from participation in the social security system to accommodate religious beliefs. Taking the Supreme Court's suggestion, Congress has allowed qualifying individuals to receive a waiver from participation in the social security system for religious reasons.[11]

Ignoring for the moment whether *Lee's* holding that requiring participation in the social security system does not violate the free exercise clause extends to the requirement that one has to submit a social security number to receive a learner's permit, *Lee's*

suggestion that Congress can grant waivers means *a fortiori* that applying for an exemption or waiver is not tantamount to participation in the social security system. Otherwise, the very creation of an exemption or waiver would defeat any accommodation made for those who do not want to participate in social security system because of religious beliefs.[12]

Since *Lee* was decided, the courts have repeatedly held that requiring a social security number does not violate any free exercise rights even when required in connection with other government programs. *Roy,* although a plurality opinion at the time it was issued,[13] dealt with whether requiring a social security number to obtain an non-social security "en-

---

**11.** In order to obtain a waiver, Applicants must submit an application to the federal government under 26 U.S.C. §1401 or §3127 to request exemption from social security. An applicant is qualified for an exemption if he or she:

> is a member of a recognized religious sect or division thereof and is an adherent of established tenets or teachings of such sect or division by reason of which he is conscientiously opposed to acceptance of the benefits of any private or public insurance which makes payments in the event of death, disability, old-age, retirement or makes payments toward the cost of, or provides services for, medical care ... 26 U.S.C. §§1401(g)(1); *see also* 26 U.S.C. §3127.

In addition, the Secretary of Health and Human Services must find that the applicant's sect (1) espouses tenets or teachings opposed to the social security system; (2) has for a substantial period of time made a practice of providing for its dependent members; and (3) has been in existence since December 31, 1950. *Id.* at 26, §1402(g)(1)(C)-(E); *see also* 26 U.S.C.A. §3127 (a similar exemption for employers and their employees where both are members of religious faiths opposed to participation in social security).

**12.** In this case, Applicants' petition for review does not allege that they were ineligible to obtain a waiver, only that they believed obtaining one violated their free exercise rights. If they obtained a waiver from social security, the Department would then be required to issue a license based on some other identification. However, if Applicants were denied a waiver, then the only avenue available to them would be to provide a social security number. *See Droz v. Commissioner of the Internal Revenue Service,* 48 F.3d 1120 (9th Cir.1994) (individual who opposed social security for religious reasons but did not qualify for exemption as he was not a member of an organized religious sect must pay tax deficiency due to unpaid social security tax).

**13.** In *Roy,* Chief Justice Burger first articulated a lower standard to be used with neutral, generally applicable laws which incidentally burden religious beliefs. This standard was met when such a law was a " reasonable means of promoting a legitimate public interest." *Id.* at 715, 106 S.Ct. 2147. At the time of the decision, five justices expressly rejected this standard. *See Id.* at 715–716, 106 S.Ct. 2147 (Blackmun, J. concurring in part); *id.* at 728, 106 S.Ct. 2147 (O'Connor, J., joined by Brennan and Marshall J.J., concurring in part and dissenting in part); *Id.* at 733, 106 S.Ct. 2147 (White, J. dissenting). At that time, the standard that was generally applied to challenges brought under the free exercise clause was that the First Amendment prevented infringements on the exercise of religious beliefs except when justified by some compelling state interest. However, in 1990, the Supreme Court in *Employment Div., Dept. of Human Resources of Oregon v. Smith,* changed the standard to one akin to the one articulated in *Roy,* so that facially neutral laws of generally applicability would not be subject this higher level of scrutiny. If, however, the restriction was not facially neutral, then the government had to show a compelling state interest that justified the burden on religious beliefs. *Smith; see also Hobbie v. Unemployment Appeals Com. of Fla.,* 480 U.S. 136, 107 S.Ct. 1046, 94 L.Ed.2d 190 (1987); *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 (1972); *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963). In 1993, in direct response to the *Smith* decision, the Religious Restoration Act was passed by Congress restoring the compelling interest and least restrictive test to government actions which incidentally burden religious beliefs, but in 1997, in *City of Boerne v. Flores,* 521 U.S. 507, 117 S.Ct. 2157, 138 L.Ed.2d 624, the United States Supreme Court struck that law down as unconstitutional, taking us back to the law as expressed in *Smith.*

titlement" was an unlawful impingement of a religious belief.[14] The Court noted that the requirement to provide a social security number was wholly neutral in religious terms and wholly applicable, and there was no claim that there was any attempt by Congress to discriminate invidiously or any covert suppression of religious beliefs. The administrative requirement did not create any danger of censorship or place a direct condition or burden on the dissemination of religious views. The Court noted that the law might confront some applicants for benefits with choices, but in no sense did it affirmatively compel applicants, by threat of sanctions, to refrain from religiously motivated conduct or to engage in conduct they found objectionable for religious reasons. As such, the legislation that indirectly and incidentally called for a choice between securing a government benefit and adherence to religious beliefs was found to be wholly different from legislation that criminalized religiously inspired activity or inescapably compelled conduct that some found objectionable.

In analyzing whether the government's interest justified the burden, the Supreme Court in *Roy* found that the use of social security numbers was a reasonable means of promoting a legitimate government interest. It held that the government's refusal to grant the applicants a special exemption did not violate the free exercise clause as it was necessary to administer the many complex programs of the government. Furthermore, because the use of social security numbers as unique identifiers aided in the staggering magnitude of the administration required in the program and in the matching techniques to monitor fraud and abuse of the system, the government's means of achieving its legitimate interests were reasonable. The Court concluded that because the burden on religion was neutral and the important government interests justifiable, Congresses' refusal to grant the applicants a special exemption did not violate the free exercise clause.

As to whether a social security number or a waiver can be required to obtain a driver's license, other jurisdictions have held, even under the more stringent "compelling state interest" test, that the use of social security numbers in motor vehicle administration may be required by those who religiously object to it. In *Penner v. King*, 695 S.W.2d 887 (Mo.1985) the applicant opposed the use of social security numbers as he equated such identifiers "mark of the beast" as foretold in the Bible. In determining that the applicant could be required to disclose his social security number, the Supreme Court of Missouri held that the disclosure requirement was the least restrictive means of achieving a compelling state interest because social security numbers were the most efficient method of locating interstate driving records, identifying drivers in-state and keeping dangerous drivers off the road. Similarly, in *Tennessee v. Loudon*, 857 S.W.2d 878 (Tenn.Crim.App. 1993) the Tennessee Court of Criminal Appeals held that an applicant who associated the social security number with the "mark of the beast" could be constitutionally compelled to disclose his social security number to obtain a driver's license because such numbers served compelling interests to distinguish a person from others with the same or similar names and inhibited persons from obtaining or using a license fraudulently or improperly. Moreover, in *Terpstra II v. Indiana*, 529 N.E.2d 839 (Ind.Ct.App.1988) the Court of Appeals of Indiana held that the State's compelling interest in promoting highway safety and protecting owners of motor vehicles, persons holding liens and the public outweighed any infringement on the applicant's religious belief that social security numbers unconstitutionally forced him to contract with a sovereign other than the Supreme Sovereign of Jesus Christ. *See also Doyle v. Wilson*, 529 F.Supp. 1343 (D.Del.1982) (social security number requirement on voucher for refund of motor vehicle fine did not violate free exercise rights); *Conant v. Hill*, 326 F.Supp. 25 (E.D.Va.1971) (social security number required for Virginia driver's license did not violate free exercise rights ); *Ostric v. Board of Appeal on Motor*

---

14. Under Congresses' requirement for the AFDC plan, the state "must provide (a) that, as a condition of eligibility under the plan, each applicant for or recipient of aid shall furnish the State agency his social security number." 42 U.S.C. §692(a)(25). The petitioner felt the use of the social security number would "rob the spirit" of his daughter.

*Vehicle Liability Policies and Bonds,* 361 Mass. 459, 280 N.E.2d 692 (Mass.1972) (social security number required for renewal of Massachusetts's driver's license did not violate free exercise rights).

In this case, the Pennsylvania statutory scheme to obtain a driver's license is neutral, generally applicable and serves legitimate government interests. The Applicants have made no claim that the law is an attempt of the General Assembly to discriminate invidiously, covertly suppress religious beliefs or create a direct condition on the dissemination of religious views. The requirement to obtain a waiver or social security number does not impede Applicants from practicing their religious beliefs because they may choose not to be subject to the eligibility requirements of the Vehicle Code by simply foregoing the privilege to drive.[15]

Moreover, the requirements to obtain a waiver or social security number are a reasonable means of promoting a legitimate government interest and administrative efficiency. The automobile dominates our society, and our economy and the Commonwealth has a legitimate interest in the proper monitoring and identifying drivers to ensure that they are competent, qualified and not dangerous to others on its highways. Because social security numbers are unique identifiers and widely utilized, they are the most efficient method of locating driving records from other states and, thus, allow the Commonwealth to prohibit dangerous drivers from other states from entering this state to obtain a license. Similarly, the requirement of a waiver of a social security number would prohibit those already with such numbers from escaping identification in the driver's licensing system or discourage those who would fraudulently obtain a license from submitting other unregulated methods of identification.

Accordingly, the preliminary objections filed by the Department based on Applicant's lack of a clear legal right to relief and no corresponding duty on the Department are granted.

### ORDER

AND NOW, this 5th day of January, 1999, the preliminary objections based on the lack of a clear legal right to relief and no corresponding duty on the Department are granted and the Petition for Review is dismissed.

---

15. Contrary to Applicants' assertion, a driver's license is a privilege, not a right, and is subject to the conditions that the legislature places upon that privilege. *Plowman v. Department of Transportation, Bureau of Driver Licensing,* 535 Pa. 314, 635 A.2d 124 (1993); *Hershey v. Com., Dept. of Transportation,* 669 A.2d 517 (Pa.Cmwlth.), *petition for allowance of appeal denied,* 544 Pa. 664, 676 A.2d 1202 (1996) (we found, without addressing free exercise arguments because none were raised, that no one has a generalized "God-given" right not to provide a social security number for a license renewal because driving was a privilege, not a right); *Wessel v. Com., Dept. of Transp., Bureau of Driver Licensing,* 168 Pa. Cmwlth. 350, 650 A.2d 1135, (Pa.Cmwlth.1994); *Commonwealth v. Strunk,* 400 Pa.Super. 25, 582 A.2d 1326 (Pa.Super.Ct.1990), *petition for allowance of appeal denied,* 528 Pa. 630, 598 A.2d 283 (1991).