Kevin **MOBLEY**, et al., Petitioners

v.

Brian **COLEMAN**, Superintendent; Debra Hawkinberry, Corrections Classification & Program Manager; Frank Lewis, Facility Chaplain Program Director; Ulli Klemm, Bureau of Treatment Services; John/Jane Doe(s), Religious Accommodation Review Committee; John Wetzel, Secretary of Corrections; et al., Respondents.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 26, 2014.

Decided Jan. 6, 2015.

Publication Ordered March 12, 2015.

Kevin Mobley, pro se.

Raymond W. Dorian, Assistant Counsel, Mechanicsburg, for respondents.

BEFORE: DAN PELLEGRINI, President Judge, MARY HANNAH LEAVITT, Judge, and ANNE E. COVEY, Judge.

OPINION BY President Judge PELLEGRINI.

Kevin Mobley (Mobley), an inmate at the State Correctional Institution–Forest (SCI–Forest), filed an action *pro se* while he was housed at SCI–Fayette on his behalf and other inmates [1] who are members of the Nation of Islam (NOI) against a number of officials from the Pennsylvania Department of Corrections (collectively,

---

1. While styled as a class action, we held in prior proceedings in this case that Mobley, a prisoner proceeding *pro se*, may not commence a class action lawsuit and that he is the only party that is now before us. *Mobley v. Coleman*, 65 A.3d 1048, 1050 n. 1 (Pa. Cmwlth.2013).

the Department)[2] alleging violations of the Establishment and Free Exercise Clauses of the First Amendment to the United States Constitution[3] and the Equal Protection Clause of Section 1 of the Fourteenth Amendment to the United States Constitution.[4]

The complaint alleges that NOI members have been unconstitutionally and illegally denied separate worship services and the Department "compel[s] [them] to 'support and attend'" contradictive, Sunni Muslim services at the prison when Sunni Muslims consider "NOI beliefs, teachings, and practices to be blasphemy, sacrilegious [sic] and contradictive" to their beliefs and do not consider NOI adherents to be true Muslims. (Complaint at ¶¶ 38, 39, 43, 44). Mobley alleges that the Department knows and understands these principles yet "ha[s] forced hostile religious enemies of the NOI and Sunni Islam groups to combine their religions and commanded religious practices into one broad Islamic group." (Id. at ¶ 52). On the basis of these facts, the complaint alleges that the Department violated the rights of Mobley and other NOI adherents under the federal Religious Land Use and Institutionalized Person Act (RLUIPA), 42 U.S.C. § 2000cc, and the Pennsylvania Religious Freedom Protection Act (Act), Act of December 9, 2002, P.L. 1701, as amended 71 P.S. §§ 2401–2407 and under the federal and Pennsylvania Constitutions. As relief, the complaint seeks, among other things, an injunction ordering the Department to "end the [Department's] special religious practices against the [Petitioner] ... [d]enying the NOI prisoners from observing their commanded religious practices," (id. at p. 12), injunctive relief allowing certain NOI services and materials at SCI–Forest,[5] and monetary damages.

The Department filed preliminary objections stating that Mobley had failed to make out a cognizable claim that his religious rights had been unlawfully or constitutionally violated. We sustained the De-

**2.** Respondents Coleman, Hawkinberry and Lewis were dismissed as parties by an order dated May 7, 2014.

**3.** U.S. Const. amend. I. The First Amendment provides, in relevant part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Id. These provisions are enforceable against the states through the Due Process Clause of the Fourteenth Amendment. Kocher v. Bickley, 722 A.2d 756, 759 n. 10 (Pa.Cmwlth.1999). Mobley's claims are also grounded in the Pennsylvania Constitution, but because our state constitution is not broader than its federal counterpart in this regard, we need only consider federal precedent to resolve this case. Meggett v. Department of Corrections, 892 A.2d 872, 879 (Pa. Cmwlth.2006).

**4.** U.S. Const. amend. XIV, § 1. Section 1 of the Fourteenth Amendment states, in pertinent part, "nor shall any State ... deny to any person within its jurisdiction the equal protection of the laws." Id. Mobley also cites the Pennsylvania Constitution, but "[o]ur Supreme Court has held that the equal protection provisions of the Pennsylvania Constitution are analyzed under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." Muscarella v. Commonwealth, 87 A.3d 966, 972 n. 8 (Pa.Cmwlth. 2014) (citation omitted).

**5.** Mobley is no longer asserting any claim with respect to SCI–Fayette and concedes that his claims regarding that prison are moot because he is no longer housed there. (Petitioner's Motion for Partial Summary Judgment at ¶ 7(t), Exhibit A at 33, 34). The Department filed a Suggestion of Mootness because Mobley had obtained partial injunctive relief due to the Department's expansion of separate religious services and group meeting times for inmates who identify with or follow NOI practices and teachings, including those at SCI–Fayette. However, we denied the Department's' application by an order dated December 16, 2013.

partment's preliminary objections under RLUIPA and the Act, concluding that Mobley failed to state a claim because the pleadings did not demonstrate that the Department's actions substantially burdened the exercise of his sincerely held religious beliefs. *See Mobley*, 65 A.3d at 1052–54. However, we overruled its preliminary objections to the foregoing constitutional claims because we could not consider matters collateral to the complaint in disposing of the preliminary objections. *Id.* at 1053.

The Department then filed an answer to Mobley's complaint with new matter asserting that there are separate religious services offered for Muslim inmates in general, and that there are no separate group religious services for NOI inmates specifically due to staffing and space restraints. In his reply to the Department's new matter, Mobley admitted that he is able to read the Qur'an and other NOI materials; he can seek donations of NOI books, provided their content meets the standards of Department Policy DC–ADM 819; each institution has its own particular staffing and space restraints; and he is only able to currently exercise his religious freedoms through reading materials. (Petitioner's Reply to Department's New Matter at ¶¶ 84, 86, 92, 95).

Mobley has filed a motion for partial summary judgment [6] alleging that since he filed this grievance, there is now a separate NOI minister and services at SCI–Fayette and that while both NOI and Sunni Muslims pray and fast and observe Ramadan and Eids, NOI Eids are observed at different times and the actions of Respondents Wetzel and Klemm in promoting the Sunni Islamic practices of Ramadan, Eids and congregational prayer to the exclusion of his NOI practices of Ramadan, Eids and congregational prayer at SCI–Forest violates the Establishment Clause. (Petitioner's Motion for Partial Summary Judgment at ¶¶ 7(e), 9(d)).[7] He

---

**6.** As this Court has explained:

> Summary judgment is properly granted where "the pleadings, depositions, answers to interrogatories, and admission[s] on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." "The record must be viewed in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." Summary judgment may be entered only in those cases where the right is clear and free from doubt.

*Commonwealth v. Jash International, Inc.*, 847 A.2d 125, 130 n. 13 (Pa.Cmwlth.2003) (citations omitted). "[A] record that supports summary judgment either (1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense." *Continental Casualty Co. v. Pro Machine*, 916 A.2d 1111, 1115 (Pa.Super.2007).

**7.** Mobley's deposition testimony is that he is serving a life term for one murder and 15–30 years for another, and that he became an NOI follower in 1999 after he entered the prison system. (Petitioner's Motion for Partial Summary Judgment, Exhibit A at 9–10). He described NOI as a Black Muslim organization that is different from other Muslim groups with different theology and prayers. (*Id.* at 19). He stated that while both Sunni Muslims and the NOI pray, fast and observe holy days such as Ramadan and Eids, they are observed at different times. (*Id.* at 13). He testified that there were 20 NOI members at SCI–Fayette and there were more Sunni Muslims, but he didn't know how many. (*Id.* at 16). He stated that there are ten NOI members at SCI–Forest. (*Id.* at 20). He testified that while there is no NOI services at SCI–Forest, there is a separate service for Sunni Muslims. (*Id.*). He stated that the NOI inmates don't get a chance to see each other because of the way the institution is run; some are on different blocks so they are not allowed to see certain people. (*Id.* at 21–22). He testified that while there were separate NOI Ramadan services at SCI–Fayette, the inmates at SCI–Forest don't participate in Ramadan. (*Id.* at 23). He stated that while

also alleges that the actions of the Department, Wetzel and Klemm in refusing to allow him a reasonable opportunity to pursue his faith at SCI–Forest comparable to other NOI inmates at other facilities within the Department are not necessary to serve a compelling interest and violates his equal protection rights because the other inmates are provided a separate NOI minister and separate NOI services. (*Id.* at ¶¶ 7(*o*), (t), 9(c)).

The Department filed a motion for summary judgment alleging that Mobley's claims with respect to SCI–Fayette are now moot because it has a separate NOI minister and religious services; not every religious group is entitled to separate religious services in prison and he is not entitled to separate NOI religious services; staffing and space restraints prohibit offering separate NOI services at SCI–Forest; these restrictions are reasonably related to legitimate penological reasons such as staffing and space restraints; and Mobley has alternate ways to practice his religion including praying in his cell, reading NOI books, viewing NOI videotapes and fasting. (The Department's Motion for Summary Judgment at ¶ 11).

## I.

■ Mobley first alleges that the provision of Sunni Muslim congregational services at SCI–Forest, while not providing for similar NOI congregational services, results in a promotion of the Sunni Muslim faith and a restriction of the NOI faith and does not have a clearly secular purpose and is an excessive entanglement in religion by the Department in violation of the Establishment Clause. We do not agree.

■ In analyzing an Establishment Clause claim, we apply the three-part test of *Lemon v. Kurtzman*, 403 U.S. 602, 612–13, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971), which requires that the Department demonstrate: (1) that its action serves a secular purpose; (2) that its principal or primary effect neither advances nor inhibits religion; and (3) that it does not foster an excessive government entanglement with religion. *In re Redevelopment Authority of the City of Philadelphia*, 595 Pa. 241, 938 A.2d 341, 346 (2007). "The touchstone for [an Establishment Clause] analysis is the principle that the 'First Amendment mandates governmental neutrality between religion and religion, and between religion and nonreligion.'" *McCreary County v. ACLU of Kentucky*, 545 U.S. 844, 860, 125 S.Ct. 2722, 162 L.Ed.2d 729 (2005) (citations omitted). Additionally, "'there is room for play in the joints between' the First Amendment's two clauses concerning religion: 'the government may ... accommodate religious practices ... without violating the Establishment Clause,' but '[a]t some point, accommodation may devolve into 'an unlawful fostering of religion.'" *Cutter v. Wilkinson*, 544 U.S. 709, 713–14, 125 S.Ct. 2113, 161 L.Ed.2d 1020 (2005) (citations omitted). However, "[a] special chapel or place of

he doesn't presently have a Qur'an, they are easily accessible at SCI–Forest and he can get one from another NOI member. (*Id.* at 23–24). He testified that NOI members read books by the Honorable Elijah Muhammad and Louis Farakhan and he has copies of those books. (*Id.* at 25). He stated that he has dismissed the parties from SCI–Fayette, but he is still suing the remaining parties because he is still subjected to discrimination and denial of his religious services. (*Id.* at 27). He testified that he is not allowed to practice his NOI religion at SCI–Forest like other religions are and that he is making an equal protection claim against SCI–Forest. (*Id.* at 28). He stated that he has appealed the staff's dismissal of his grievance to the Superintendent and that once he finishes his grievance appeals, he intends to file a separate lawsuit against SCI–Forest. (*Id.* at 28–29).

worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand." *Cruz v. Beto*, 405 U.S. 319, 322 n. 2, 92 S.Ct. 1079, 31 L.Ed.2d 263 (1972).[8] As our Supreme Court has explained, " '[i]nteraction between church and state is inevitable and we have always tolerated some level of involvement between the two. Entanglement must be 'excessive' before it runs afoul of the Establishment Clause.' " *In re Redevelopment Authority of the City of Philadelphia*, 938 A.2d at 348 (citations omitted).

The pleadings in this case and Mobley's deposition testimony[9] demonstrate that the Department has not violated the Establishment Clause by providing congregational services for Sunni Muslims while denying such services for NOI members at SCI–Forest. Mobley admits that he is one of only ten NOI members housed at SCI–Forest, and that each institution has its own particular staffing and space restraints. The Department has asserted the legitimate secular penological reason that staffing and space restraints prohibit offering separate NOI services at SCI–Forest.[10] While a secondary effect of providing congregational services for Sunni Muslims advances interests of that faith, there is nothing in the record showing that this is its principal or primary effect or that the Department is in any way fostering that religion rather than merely accommodating the religious practices of its adherents presently housed at SCI–Forest. Mobley may not be permitted to practice his faith in the manner that he prefers through group worship, but there is no indication that the Department has inhibited or interfered with alternative means by which he may do so or that it has required him to participate in services for Sunni Muslims thereby excessively entangling itself with religion. *See Mobley*, 65 A.3d at 1054 ("[H]e has not pled that he

---

8. *See also Sharp v. Johnson*, 669 F.3d 144, 160 (3d Cir.), *cert. denied*, —— U.S. ——, 133 S.Ct. 41, 183 L.Ed.2d 680 (2012) ("[W]e have never indicated, let alone clearly established, that a single prisoner or a non-substantial number of like-minded prisoners are entitled to place on the state the burden of furnishing separate religious services for them.") (footnote omitted).

9. As this Court has explained:
   Oral testimony of the moving party or his witnesses, by itself, even if uncontradicted, is generally insufficient to establish the absence of a genuine issue of material fact. Pa. R.C.P. No. 1035.2, Note (citing *Nanty-Glo v. American Surety Co.*, [309 Pa. 236, 163 A. 523 (1932)], and *Penn Center House, Inc. v. Hoffman*, [520 Pa. 171, 553 A.2d 900 (1989)]). Oral testimony that constitutes an adverse admission by a non-moving party does not fall within this rule. *Department of Environmental Resources v. Bryner*, [613 A.2d 43 (Pa.Cmwlth.1992)].
   *Office of Attorney General ex rel. Corbett v. Richmond Township*, 2 A.3d 678, 680 (Pa. Cmwlth.2010) (footnote omitted).

10. Mobley's reliance on *Allah v. Menei*, 844 F.Supp. 1056 (E.D.Pa.1994), is misplaced. In that case, the inmate's request for supplies and approval of an outside spiritual leader to conduct Temple of Islam services was denied because, *inter alia*, the Temple of Islam was found by prison officials to be religiously identical to the recognized NOI faith group and that his separate Temple of Islam religious needs were met by the NOI services that were already provided. 844 F.Supp. at 1063–64. The court explained that "[t]he defendants seem to assert that prison officials may judge whether the [inmate]'s honestly believed contentions of difference between his faith and the [NOI] are correct. The government has a constitutional obstacle to making any such judgments." *Id.* at 1065 (citations omitted). In contrast, in this case, the Department did not deny Mobley's request based on a judgment of religious redundancy; it was based on admittedly valid secular penological reasons.

222

is unable to privately worship, that he is not allowed to associate with other NOI members, or that he is not allowed access to NOI texts or other religious items associated with his religion. It is not the responsibility of the prison to provide Mobley with access to others of his specific faith for ceremonies of worship. . . .").[11]

## II.

■■ Finally, Mobley claims that his equal protection rights are violated because he does not have a reasonable opportunity to pursue his faith comparable to other NOI inmates at other Department facilities. However, in order to properly state an equal protection claim, Mobley must allege that he is receiving different treatment from that received by other similarly-situated individuals due to his membership in a particular class and his assertions of intentional disparate treatment must be supported by specific factual allegations. *Myers v. Ridge*, 712 A.2d 791, 799 (Pa.Cmwlth.1998), *appeal denied*, 560 Pa. 677, 742 A.2d 173 (1999).

Mobley has failed to allege how he and the other nine NOI followers housed at SCI–Forest are similarly situated to the NOI followers housed at other Department facilities. He also specifically conceded that each institution has its own particular staffing and space restraints. As the Third Circuit Court of Appeals has explained:

[Prisoner] alleged that the [Department] violated his rights under the Equal Protection Clause by preventing him from worshipping with other Rastafarians, since Christians, Jews, Muslims, and Native Americans are permitted to attend group religious services. But he has failed to provide any competent summary judgment evidence that similarly situated faiths are treated differently from Rastafarians. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 [105 S.Ct. 3249, 87 L.Ed.2d 313] (1985) (stating that the Equal Protection clause does not require that all persons be treated alike, but rather that "all persons similarly situated should be treated alike."); *see also Cruz*, 405 U.S. at 322 n. 2 [92 S.Ct. 1079] (recognizing that "[a] special chapel or place of worship need not be provided for every faith regardless of size; nor must a chaplain, priest, or minister be provided without regard to the extent of the demand."). Accordingly, we agree that [Prisoner] has failed to state an equal protection claim sufficient to survive summary judgment. *See Williams v. Morton*, 343 F.3d 212, 221–22 (3d Cir.2003).

---

**11.** With respect to Mobley's Free Exercise claims, as noted above, we sustained the Department's preliminary objection and dismissed Mobley's RLUIPA claim because the pleadings, even .if accepted as true, did not demonstrate that the Department's actions substantially burdened the exercise of his sincerely held religious beliefs. *See Mobley*, 65 A.3d at 1052–54. As this Court has explained, "Congress, ... in adopting the 'compelling interest' standard in RLUIPA, ... intended to impose a more demanding evidentiary standard on a governmental agency or official when they create a substantial burden on a person's religious freedom, in comparison to the standard developed under the First Amendment." *Thomas v. Corbett*, 90 A.3d 789, 796 (Pa.Cmwlth. 2014) (citation omitted). Because Mobley's complaint failed to state a claim under the RLUIPA, which imposes a more stringent evidentiary standard on the Department, it likewise fails to state a constitutional claim. *See, e.g., id. See also Commonwealth v. Stewart*, 547 Pa. 277, 690 A.2d 195, 201 n. 5 (1997) ("The Commonwealth questions the constitutionality of [the RLUIPA's predecessor statute, the Religious Freedom Restoration Act, former 42 U.S.C. §§ 2000bb–2000b–4]. We do not, however, decide this issue because we conclude that, under the more stringent 'compelling interest' standard, the Diocese's free exercise rights are not unconstitutionally burdened.").

*Smith v. Kyler,* 295 Fed.Appx. 479, 484 (3d Cir.2008), *cert. denied,* 557 U.S. 924, 129 S.Ct. 2837, 174 L.Ed.2d 561 (2009).

Accordingly, Mobley's motion for partial summary judgment is denied; the Department's motion for summary judgment is granted; and Mobley's class action/civil rights complaint is dismissed.

### *ORDER*

AND NOW, this 6th day of January, 2015, Petitioner Mobley's motion for partial summary judgment is denied; the Department's motion for summary judgment is granted; and Petitioner Mobley's class action/civil rights complaint is dismissed.