# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Purcell Bronson,                                :
                    Petitioner                  :
                                                :
        v.                                      :    No. 610 M.D. 2017
                                                :    Submitted: May 25, 2018
John Wetzel, Michele McMullen,                  :
Barry Smith,                                    :
                    Respondents                 :

BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
            HONORABLE ROBERT SIMPSON, Judge
            HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                        **FILED: June 26, 2018**


Inmate Purcell Bronson (Bronson), representing himself, filed a petition for review (complaint) in this Court's original jurisdiction against John Wetzel, Secretary of the Department of Corrections (DOC), and two DOC employees (collectively, Respondents). Through the complaint, Bronson alleges Respondents are violating his rights under DOC Policy DC-ADM 007 ("Access to Provided Legal Services") (Policy) as it relates to the amount of time he may use the prison law library on a weekly basis. Respondents filed a preliminary objection, challenging the legal sufficiency of the complaint. Upon review, we sustain Respondents' preliminary objection and dismiss the complaint.


## I. Background

Through his complaint, which he initially refers to as a "petition for writ of mandamus," Bronson avers the following facts. Pet. for Review at 2. Bronson is currently incarcerated at the State Correctional Institution at Houtzdale

(SCI-Houtzdale). Respondent Barry Smith is the Superintendent of SCI-Houtzdale and is responsible for the overall operation of the prison as well its personnel's compliance with DOC policies. Respondent Michele McMullen is the school principal at SCI-Houtzdale and is responsible for overall operation of the law library. Respondent Wetzel, Secretary of DOC, is responsible for DOC's overall operation and the promulgation of policies governing all state prisons.

Bronson avers Respondents instituted an arbitrary practice of closing the prison population's law library when they feel they need not open it, in violation of DOC policy. He alleges that the intent of Respondents' practice is to limit his time in the law library, "to one hour, twice a week, if that, and hender [sic], and obstruct prisoners' presentation of petitions to the courts." Pet. for Review at 3.

Bronson further avers that Respondents refuse to follow the Policy, which states: "Research periods will be schedule[d] and assigned in time blocks of two hours each, for a maximum of six hours per week." Id. (emphasis added). Despite the language of the Policy, Bronson alleges the Policy requires Respondents to provide him access to the law library for two hours a day, three days a week.

He also avers Respondents' practices are discriminatory in that they allow restricted housing unit (RHU) prisoners this access when, for all practical purposes, Bronson and the RHU prisoners are similarly situated. Bronson avers Respondents have no rational basis for ignoring the Policy. He alleges Respondents have a legal duty not to infringe on his rights as provided by prison administrative regulations and the law.

2

He further generally avers Respondents' actions were intentional and served no important penological interest. Bronson alleges his interest is his right to be free from discriminatory treatment as well as enjoyment of his law library access for the purpose of obtaining his release from prison. He avers he has no other adequate legal remedy to contest Respondents' practices, and he exhausted his prison remedies.

As a result of Respondents' actions, Bronson alleges, his rights as protected by the First and Fourteenth Amendments to the U.S. Constitution were violated. He seeks a declaratory judgment that Respondents' actions, practices, and policies are discriminatory and serve no important penological interest. Bronson also seeks injunctive relief, requiring Respondents to abide by the Policy and provide him access to the law library, for two hours a day, three days a week.

In response to the complaint, Respondents filed a preliminary objection in the nature of a demurrer. Bronson filed an answer to the preliminary objection. The parties filed briefs in support of their positions on the preliminary objections. This matter is now before us for disposition.

## II. Discussion

A demurrer tests the legal sufficiency of the complaint. Christ the King Manor v. Dep't of Pub. Welfare, 911 A.2d 624 (Pa. Cmwlth. 2006) (en banc), aff'd, 951 A.2d 255 (Pa. 2008) (per curiam). In ruling on a preliminary objection in the nature of a demurrer, this Court accepts as true all well-pled allegations of material fact, as well as all inferences reasonably deducible from those facts. Id. However,

3

this Court need not accept unwarranted inferences, conclusions of law, argumentative allegations, or expressions of opinion. Id. For preliminary objections to be sustained, it must appear with certainty that the law will permit no recovery. Id. Any doubt must be resolved in favor of the non-moving party. Id.

## A. Contentions

Respondents argue that, to the extent Bronson attempts to assert an access to courts claim based on his limited use of the law library, he does not sufficiently aver actual injuries. In order to state a viable claim, Respondents contend, an inmate must show a non-frivolous legal claim was frustrated or impeded. Lewis v. Casey, 518 U.S. 343 (1996). Respondents maintain an inmate must also allege an actual injury to his litigation efforts. Id. Further, a viable access to the courts claim must allege the responsible state officials "wrongfully and intentionally conceal[ed] information crucial to a person's ability to obtain redress through the courts … for the purpose of frustrating that right, and that concealment, and the delay engendered by it substantially reduce[d] the likelihood of one's obtaining the relief to which one is otherwise entitled." Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety Div. of State Police, 411 F.3d 427, 445 (3d Cir. 2005).

Respondents contend that Bronson indicates the law library is closed at times, and that "hender [sic] and obstruct prisoners' presentation of petitions to the courts." Resp'ts' Br. at 4 (quoting Pet. for Review at 3). They maintain Bronson does not indicate any dates he was denied access to the law library or any injury resulting from the alleged denial of access such as delayed filings, cases lost, or damages incurred. Respondents argue such a deficient claim warrants dismissal.

4

Respondents further assert that Bronson's claim that Respondents violated the Policy should be dismissed as DOC policies do not create enforceable rights. Weaver v. Dep't of Corr., 829 A.2d 750 (Pa. Cmwlth. 2003). Additionally, they argue Bronson's attempts to aver Policy violations do not state a viable claim. Taken as true, Respondents assert, Bronson's averments indicate he *is receiving* two hours of law library time per week, the minimum outlined in the Policy. More importantly, they contend, Bronson's averments that the Policy is violated when he is afforded a lesser amount of time per week in the law library do not state a viable claim.

Bronson counters that for approximately five years he was deprived of his full law library access of two hours a day, three days a week for no important penological reason.

He argues the crux of his equal protection claim is that Respondents arbitrarily and unfairly grant full access to the law library to RHU inmates in accordance with the Policy and 37 Pa. Code §93.8(8) (requiring that inmates have reasonable access to certain enumerated legal reference materials, including, "[o]ther materials which may assist inmates to prepare their own legal documents") rather than those inmates in the prison's general population. Bronson contends he can show Respondents are exercising their discretion in a discriminatory fashion or that they are disregarding the Policy. He maintains that, as the U.S. Supreme Court stated in Bell v. Wolfish, 441 U.S. 520, 538-39 (1979), "if a restriction or condition is not reasonably related to a legitimate goal – if it is arbitrary or purposeless – a court permissibly may infer that the purpose of the government action is punishment

5

that may not constitutionally be inflicted …. " Bronson argues prisoners enjoy privileges that can be taken away if they misbehave, but he has not done so here. He contends that when a prisoner loses the opportunity "to … use the library … he has lost much. …" Pet'r's Br. at 8 (citing Redding v. Fairman, 717 F.2d 1105, 1116 (7th Cir. 1983)). Thus, he maintains, prisoners must be protected from arbitrary actions extinguishing their privileges.

Bronson further argues that federal and state courts find due process violations where state or local prison officials fail to enforce or follow their own regulations.[1]

In addition, he asserts the pertinent part of the Policy uses mandatory language, and Respondents lack discretion not to adhere to the Policy. He maintains government agencies must follow their own published regulations even when a particular decision involves some discretion. Griffin v. Harris, 571 F.2d 767 (3d Cir. 1978).

Bronson also argues a "library interest" entitled to protection under the 14th Amendment may be created by administrative regulation, Pet'r's Br. at 9 (citing Winsett v. McGinnes, 617 F.2d 996 (3d Cir. 1980)), and may be rooted in prison rules or regulations or official policies or practices. Meachum v. Fano, 427 U.S. 215 (1976). He asserts his interest in the Policy is sufficient to state a claim.

---

[1] See Yellin v. United States, 374 U.S. 109 (1963); Voge v. United States, 844 F.2d 776 (Fed. Cir. 1988); United States ex rel. Checkman v. Laird, 469 F.2d 773 (2d Cir. 1972); Carpenter v. Civil Serv. Comm'n, 813 P.2d 773 (Colo. App. 1990); Lathop v. Brewer, 340 F. Supp. 873 (D. Iowa 1972).

**B. Analysis**

**1. Access to the Courts**

An inmate alleging a violation of the right of access to the courts must show an actual injury. <u>Lewis</u>; <u>Bounds v. Smith</u>, 430 U.S. 817 (1977). Prison inmates enjoy a fundamental constitutional right of access to the courts. <u>Lewis</u>; <u>Bounds</u>; <u>Bronson v. Horn</u>, 830 A.2d 1092 (Pa. Cmwlth. 2003). The right of access "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." <u>Bounds</u>, 430 U.S. at 828; <u>accord</u> <u>Bronson</u>.

The U.S. Supreme Court clarified the contours of this right, holding that, to prevail on a claim that inadequate legal materials or assistance resulted in a denial of access to the courts, an inmate must establish he incurred an "actual injury," that is "the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." <u>Lewis</u>, 518 U.S. at 351; <u>accord</u> <u>Moss v. Dep't of Corr.</u>, 868 A.2d 615 (Pa. Cmwlth. 2004). In other words, an inmate bringing an action based on a violation of his right to access to the courts must allege he was hindered from adequately pursuing litigation in some specific manner. <u>Lewis</u>. An inmate may make such a showing by alleging his complaint was dismissed or he was precluded for some reason from even filing a complaint. <u>Id.</u> For example, an inmate must show

> that a complaint he prepared was dismissed for failure to satisfy some technical requirement which, because of deficiencies in the prison's legal assistance facilities, he could not have known. Or that he had suffered arguably actionable harm that he wished to bring before the courts, but was so stymied by inadequacies of the law library that he was unable even to file a complaint.

7

Lewis, 518 U.S. at 351. Further, the injury requirement is not satisfied by any type of frustrated legal claim, but only by claims relating to direct appeals from criminal convictions involving incarceration, habeas petitions and civil rights actions to vindicate basic constitutional rights. Lewis; Moss.

The actual injury requirement ensures that courts provide relief to inmates only when they have suffered or will imminently suffer actual harm and prevents courts from undertaking tasks assigned to the other political branches. Lewis. Thus, an inmate who cannot show he was hindered in bringing his claims or that he was otherwise injured by any alleged unconstitutional deficiencies in prison resources lacks standing to bring a claim of denial of access to the courts. See Lewis.

Applying these principles here, Bronson was required to allege he was actually harmed by the Policy. Our review of Bronson's complaint discloses no specific averment of any actual injury. Rather, he generally avers that limiting his time in the law library to two hours per week hinders "presentation of petitions to the courts." Pet. for Review at 3. In the absence of any specific averment, Bronson fails to state an adequate claim for denial of access to the courts.[2]

### 2. Claims Based on the Policy

Bronson's complaint also purports to state claims for mandamus, injunctive relief, declaratory relief and a violation of his right to equal protection, all

---

[2] In his answer to Respondents' preliminary objection, Bronson states that his claim "is not one of denial of access to the court per se [sic], rather its [sic] a denial of access to the Policy's benefit." Pet'r's Resp. in Opp'n to Resp'ts' Prelim. Objs. at ¶2 (emphasis added). Thus, to the extent Bronson purported to state a claim for denial of access to the courts in his complaint, see Pet. for Review at 3, he does not argue that his failure to set forth any specific averment of actual injury in support of such a claim could be cured by amendment.

of which are premised on his allegations that Respondents' actions violate the Policy.  Regardless of the manner in which Bronson attempts to characterize the causes of action alleged in his complaint, however, "[a] prison authority's adoption of policies and practices creates neither rights in inmates nor a constitutionally protected interest triggering the inmates' due process protection."  Orozco v. Pa. Dep't of Corr. (Pa. Cmwlth., No. 268 C.D. 2013, filed January 14, 2014), 2014 WL 117475 (unreported) (citing Olim v. Wakinekona, 461 U.S. 238 (1983); Weaver; Bullock v. Horn, 720 A.2d 1079 (Pa. Cmwlth. 1998)).  Thus, "[a] failure to comply with prison policy is not a basis for a cause of action."  Rawlings v. Wetzel (Pa. Cmwlth., No. 562 M.D. 2016, filed October 20, 2017), slip op. at 7, 2017 WL 4701136 at *3 (unreported) (citing Africa v. Horn, 701 A.2d 273 (Pa. Cmwlth. 1997)) (emphasis added); see also Shore v. Dep't of Corr, 168 A.3d 374, 386 (Pa. Cmwlth. 2017) (citing Tindell v. Dep't of Corr., 87 A.3d 1029 (Pa. Cmwlth. 2014); Bullock) ("[A]llegations that [DOC] failed to follow its regulations or internal policies cannot support a claim based upon a vested right or duty because these administrative rules and regulations, unlike statutory provisions, usually do not create rights in prison inmates.").

> To that end, the Policy, on which Bronson relies here, expressly states:
>
> This policy does not create rights in any person nor should it be interpreted or applied in such a manner as to abridge the rights of any individual.  This policy should be interpreted to have sufficient flexibility to be consistent with law and to permit the accomplishment of the purpose(s) of the policies of [DOC].

DC-ADM 007, Section VI (emphasis added).

9

In Weaver, this Court held that identical, "disclaimer" language in another DOC policy was "sufficient to dispel any reasonable expectation that an enforceable right [was] created by the DOC policy." Id. at 753. We reach the same result here. Thus, Bronson cannot state a cause of action based on an alleged violation of the Policy here. Id.

Further, Bush v. Veach, 1 A.3d 981 (Pa. Cmwlth. 2010), relied on by Bronson, is distinguishable. There, an inmate was removed from his job in the prison's kitchen when he was caught taking unauthorized food. This Court concluded that the petitioner could not state a due process claim against prison employees because he did not have a property right in his prison job. However, a divided panel of this Court concluded the petitioner sufficiently alleged a cause of action for a violation of his rights established by DOC regulations. Specifically, the process for removing the petitioner from his job was set forth in Section 93.10 of DOC's regulations, 37 Pa. Code §93.10. Section 93.10(a)(2)(v) states that an inmate found guilty of certain misconduct may be removed from his job. 37 Pa. Code §93.10(a)(2)(v). However, the regulation provides procedures for imposing such discipline, including written notice of the charges, a hearing, and an opportunity for the inmate to tell his story and to present evidence. 37 Pa. Code §93.10(b)(1)-(3). Ultimately, this Court held, because the petitioner received neither written notice nor any of the other procedures outlined in the regulation, he stated a cause of action for violation of the regulatory disciplinary process.

Aside from the obvious factual distinction that Bush involved an inmate's permanent removal from a prison job and this case does not, unlike the

inmate in <u>Bush</u>, who sufficiently alleged he was deprived of rights expressly provided for in DOC's regulations, as stated above, the Policy at issue here expressly states that *it creates no rights in any person*.[3]

Based on the foregoing, we sustain Respondents' preliminary objection and dismiss Bronson's complaint, with prejudice.

ROBERT SIMPSON, Judge

---

[3] Further, while Bronson cites Section 93.8(8) of DOC's regulations, 37 Pa. Code §93.8(8), which states that inmates will be afforded reasonable access to certain enumerated legal reference materials, including "[o]ther materials which may assist inmates to prepare their own legal documents[,]" he does not identify any materials that he did not receive, which would assist him in the preparation of his legal documents.

In addition, Bronson asserts his complaint states a claim for violation of his right to equal protection because Respondents arbitrarily and unfairly "grant[] privileges within the prison as to full access to the [l]aw [l]ibrary in accord with [the Policy] and 37 Pa. Code §93.8(8)." Pet'r's Br. at 8. He contends prisoners in the RHU receive greater access to the law library than prisoners housed in the prison's general population.

Section 1 of the 14th Amendment to the U.S. Constitution provides, in relevant part: "No State shall … deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV, §1. Article 1, Section 26 of the Pennsylvania Constitution declares: "Neither the Commonwealth nor any political subdivision thereof shall deny to any person the enjoyment of any civil right, nor discriminate against any person in the exercise of any civil right." PA. CONST. art. I, §26. "Together, [Article 1, Section 1 and Article 1, Section 26 of the Pennsylvania Constitution] are understood to establish a right to equal protection of the laws equivalent to that established in the United States Constitution." <u>Smires v. O'Shell</u>, 126 A.3d 383, 393 n.7 (Pa. Cmwlth. 2015). "Our Supreme Court has held that '[t]he Equal Protection Clause … does not obligate the government to treat all persons identically, but merely assures that all similarly[-]situated persons are treated alike.'" <u>Garrison v. Dep't of Corr.</u>, 16 A.3d 560, 564 (Pa. Cmwlth. 2011) (quoting <u>Small v. Horn</u>, 722 A.2d 664, 672 (Pa. 1998)). Further, "in order to properly state an equal protection claim, [a petitioner] must allege that he is receiving different treatment from that received by other similarly-situated individuals due to his membership in a particular class <u>and his assertions of intentional disparate treatment must be supported by specific factual allegations</u>." <u>Mobley v. Coleman</u>, 110 A.3d 216, 222 (Pa. Cmwlth. 2015) (emphasis added). Here, Bronson's claims of disparate treatment are not supported by specific factual allegations, and he does not seek leave to amend his complaint in an effort to supply such allegations.

11

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Purcell Bronson,                          :
                        Petitioner        :
                                          :
            v.                            :   No. 610 M.D. 2017
                                          :
John Wetzel, Michele McMullen,            :
Barry Smith,                              :
                        Respondents       :

# **O R D E R**

AND NOW, this 26th day of June, 2018, the preliminary objection filed by Respondents John Wetzel, Michele McMullen and Barry Smith is SUSTAINED, and Petitioner Purcell Bronson's petition for review is DISMISSED, with prejudice.


_____
ROBERT SIMPSON, Judge